BOARD OF COMMISSIONERS OF ROBESON COUNTY
v. C. N. MALONE ET AL.

(Filed 20 December, 1919.)

**Elections—Notices—Irregularities—Municipalities—Bond Issues.**

Where the election for the issue of bonds by a township for road purposes has been held in all respects in accordance with the provisions of a statute, at the usual polling places, etc., they will not be declared invalid at the instance of a purchaser, on the ground that notice of the new registration ordered had not been advertised for the full twenty-day period stated in Rev., 4305, amended by the Laws of 1913, or that the full period of the thirty-day notice of the time and place of the election had been advertised as set out in Rev, 2967; sec. 47, ch. 56, Consolidated Statutes, Vol. I, when there is no suggestion of fraud and full publicity had been given by newspapers of large local circulation, the election had been broadly discussed beforehand, and it does not appear that any voter is objecting to the bonds or has been deprived of his right to vote.

APPEAL by defendant from *Calvert, J.,* at December Term, 1919, of ROBESON.

This is a controversy without action, submitted under an agreed case.

Under the authority of an act of the General Assembly of North Carolina passed at the session of 1919, entitled "An act to authorize the issue of township road bonds for the townships of Robeson County," the board of commissioners, at their regular meeting held on Monday, 7 April, 1919, ordered an election for Lumberton Township to vote on the question of issuing the bonds of the township in the sum of $100,000 for road purposes. A new registration was ordered for the township, and it was ordered that notice of the election be posted at the courthouse door, being the voting precinct of the township, for thirty days prior to the day of election and notice published in the *Robesonian* for four weeks in succession prior to the day of election. The election to be held on 20 May, 1919.

It was forty-four days from the ordering of the election to the day of election. The notice of election was posted at the courthouse door, being

the voting precinct, for thirty-three days prior to the day of election, and was published in the *Robesonian* in its issues 24 April, 1, 8, and 15 May. The following is a copy of the notice so posted and published:

"NOTICE OF LUMBERTON TOWNSHIP ROAD BOND ELECTION.

Notice is hereby given that the board of commissioners of Robeson County has ordered an election for Lumberton Township, Robeson County, for the purpose of allowing the voters of the township to vote on the question of issuing one hundred thousand dollars in bonds for the township for road purposes. Notice is further given that said election will be held at the voting precinct in said township in the town of Lumberton on the 20th day of May, 1919, and to that end a new registration has been ordered for said election, and that only those who register for said election will be allowed to vote in the election. Notice is further given that Wade Wishart has been appointed as registrar, and that the registration books will be open on the 17th day of April and remain open until sunset on Saturday the 10th day of May, 1919, Sundays excepted, and that on Saturday, the 19th and 26th days of April, and on Saturday, the 3d and 10th days of May, 1919, said registrars will attend at the voting precinct in said township with said registration books from nine o'clock in the forenoon until sunset for the purpose of allowing those who appear for that purpose to register.

This the 16th day of April, 1919.

BOARD OF COMRS. OF ROBESON COUNTY,<br>By M. W. Floyd, Clerk."

The registration books were kept open for twenty-two days during the time required by law. The election was held on 20 May, 1919, and resulted in favor of the bond issue as shown from the election returns.

At the regular meeting of the board of commissioners on Monday, 5 May, on a petition filed and under authority of said act of assembly, the board of commissioners ordered an election for Maxton Township to vote on the question of issuing $100,000 in bonds for road purposes. A new registration was ordered as provided in said act, and the election ordered to be held at the voting precinct in Maxton Township. It was forty-three days from the date the election was ordered until the day the election was held, and, under order of the board of commissioners, notice of the election was posted at the courthouse door of Robeson County, and at the voting precinct in Maxton Township for thirty days, and published in the *Robesonian* for four weeks in succession prior to the day of election. The notice of election was posted at the courthouse door and at the voting precinct in Maxton Township for thirty-five days, and the registration books were kept open for the registration of

voters for twenty-three days. The notice was similar to the one posted and published for the election in Lumberton Township.

In both elections the polls were properly opened at sunrise and closed at sunset, and the ballots canvassed and returned as provided in the act of assembly.

The said act of the General Assembly prior to the ordering of the said elections was published in full in the *Robesonian,* a newspaper published in the town of Lumberton with wide circulation in both Lumberton and Maxton Townships. After the April meeting of the board of commissioners, and also after the May meeting of the board of commissioners, the order of the board calling the election was published in the *Robesonian* and commented on in the editorial columns of the paper. Also the calling of the election in both townships was commented on by the *Lumberton Tribune,* a newspaper published in the town of Lumberton with wide circulation in Lumberton and Maxton townships.

There was no change in voting precincts in either township for these elections, but the elections were both held at the well established places for holding of elections in each township.

The defendants are the purchasers of the $100,000 of Lumberton Township and $100,000 of Maxton Township road bonds at a sale held on 27 August, 1919, and they decline to accept and pay for said bonds, contending that the election held in Lumberton Township, Robeson County, North Carolina, on the 20 May, 1919, on the question of the issuance of $100,000 of road bonds by said township was not held according to law, and that, therefore, the bonds advertised and sold on 27 August, 1919, are not the legal and valid obligations of said township; and that the election held in Maxton Township, Robeson County, North Carolina, on 18 June, 1919, on the question of the issuance of $100,000 of road bonds by said township was not held according to law, and that, therefore, the bonds advertised and sold on 27 August, 1919, are not the legal and valid obligations of said township for the following reasons:

1. That twenty days notice of a new registration was not given as required by section 4305 of the Revisal of 1905, as amended by chapter 138, Laws of 1913.

2. That thirty days notice of the election was not given as required by section 2967 of the Revisal of 1905; section 47, chapter 56, of Consolidated Statutes, vol. 1.

His Honor entered judgment in favor of the plaintiffs, declaring the bonds to be valid and requiring the defendant to pay for them, and the defendant excepted and appealed.

*E. J. Britt and McLean, Varser, McLean & Stacy for plaintiff.*
*G. A. Thomasson and Chas. N. Malone for defendant.*

ALLEN, J. The statutory requirements in regard to holding elections to authorize the issue of bonds, have not been complied with to the letter, but the agreed facts show more than usual caution to give full and ample notice of the new registration and of the time and place for holding the elections, and it does not appear that any one has been deprived of his right to register and vote by reason of the irregularities, or that any voter or taxpayer of Lumber or Maxton townships is now registering the issue of the bonds.

On the contrary, it is fair to presume that all the taxpayers are content with the result of the elections, since no action has been instituted in their behalf, no application has been made for them to be parties to the present action, and the only complaining party is the defendant, who has no standing in Court except as a purchaser of the bonds.

The irregularities are not sufficient to invalidate the bonds, in the absence of fraud, and none is alleged or suggested.

"Where an election appears to have been fairly and honestly conducted, it will not be invalidated by mere irregularities which are not shown to have affected the result, for in the absence of fraud the courts are disposed to give effect to elections when possible. And it has even been held that gross irregularities not amounting to fraud do not vitiate an election." 15 Cyc., 372.

"It is clear that since an entire failure to give the special notice required by a statute does not necessarily avoid a general election, an imperfect or defective notice which does not mislead electors so that they lose the right to exercise their franchise, certainly will not do so. And it is equally clear in the case of special elections wherein the necessity for notice is so much more urgent, that the rule as to compliance with statutory requirements in the giving of notice should be much more strictly enforced. Considerable liberality is, however, allowed even in these elections, and it is a rule of pronounced authority that the particular form and manner pointed out by a statute for giving notice is not essential, provided, however, there has been a substantial compliance with statutory provisions. Following this rule, it has been held that where the great body of the electors have actual notice of the time and place of holding the election, and of the questions submitted, this is sufficient; and so the formalities of giving notice, although prescribed by statute, are frequently considered directory merely in the absence of an express declaration that the election shall be void unless the formalities are observed. This liberal rule is based upon the theory that where the people have actually expressed themselves at the polls the courts are strongly inclined to uphold rather than to defeat the popular will." 9 R. C. L., 992.

"An irregularity in the conduct of an election which does not deprive

a voter of his rights or admit a disqualified person to vote, which casts no uncertainty on the result, and which was not caused by the agency of one seeking to derive a benefit from the result of the election, will be overlooked when the only question is which vote was greatest. The same principles are applicable to the rules regulating the registration of electors." *Briggs v. Raleigh,* 166 N. C., 153.

The same principle was applied and an issue of bonds sustained in *Hill v. Skinner,* 169 N. C., 411, which was an action by the taxpayer in which there was a special election and a new registration ordered, and the notice of the new registration was only published fifteen days and the registration books kept open eight days, when the statutory requirement in the first instance was thirty days, and in the second twenty, irregularities more serious than in the present one.

We are of opinion the bonds are valid, and that the judgment must be

Affirmed.