W. G. PENLAND, UTE HYATT, W. T. JENKINS, JOHN MILLER, L. J. MOODY, R. O. MARTIN, ROBERT LEE, Z. D. BLANKENSHIP, VARNAL GRANT, J. R. JENKINS, JAKE ELLIOTT, R. M. WALDROP, W. M. DeHART, H. T. JENKINS, T. N. DAVIS, A. H. HUGHES, W.. C. RANDALL, G. E. BLANKENSHIP, J. H. WILSON, R. D. ESTES, M. P. CUNNINGHAM, CARL LEE, THAD GREEN, J. B. BLANKENSHIP, LEE BIRCHFIELD; C. R. SHOOK, J. C. GARLAND, BOB WIGGINS, J. A. GIBSON, H. T. BRANTON, ANSELL HALL, JAKE RANDOLPH, W. H. SHULER, AND ALL OTHER CITIZENS AND TAXPAYERS RESIDING OR OWNING PROPERTY IN THAT PARTICULAR BOUNDARY OR TERRITORY HEREINAFTER DESCRIBED AS THE BOUNDARY ATTEMPTED TO BE ANNEXED TO THE ORIGINAL TOWN LIMITS OF THE TOWN OF BRYSON CITY WHO WILL COME IN, MAKE THEMSELVES PARTIES, AND CONTRIBUTE TO THE EXPENSE OF THIS ACTION, v. THE TOWN OF BRYSON CITY, E. C. BRYSON, MAYOR OF THE TOWN OF BRYSON CITY, S. W. BLACK, A. M. BENNETT AND R. Q. WOODY, COMPOSING THE BOARD OF ALDERMEN OF SAID TOWN OF BRYSON CITY, AND D. T. CRISP, TAX COLLECTOR OF SAID TOWN OF BRYSON CITY.

(Filed 2 July, 1930.)

1. Statutes A a—Where original act incorporating a town is passed according to Article II, sec. 14, it is not required that act enlarging its boundaries be passed thereunder.

Where an act incorporating a town has been passed by the Legislature in conformity with the provisions of our Constitution, Art. II, sec. 14, and

at a subsequent session an act to submit the question of enlarging the boundaries of the town to the electorate of the town is also passed in conformity therewith, and an act is later passed at the same session of the Legislature to make the description more definite and to some extent adding a little more territory beyond the later boundaries, each act including the original boundaries of the town, it is not necessary that the last act be passed in accordance with Art. II, sec. 14, and an election thereunder is properly authorized.

**2. Elections B a—Error in statute appointing date for election held patent and immaterial and validity of election not affected thereby.**

Where a statute directs that an election be held by the voters of a municipality on a certain day of the week, 18 April, and that day of the week is the 19th, and the election is accordingly had on the 19th: *Held*, the error in the statute is patent upon its face and too technical to declare the election held thereunder invalid on that account.

**3. Elections I d—Where it does not appear that result of election was affected by irregularities the election will be upheld.**

Where an election to determine the choice of the voters of a town for or against enlarging its boundaries is required to be held under the Australian Ballot System, and it appears that the law was not strictly enforced, the result of the election will not be declared invalid by the courts on that account if it appears that the voters had freely voted their choice, without influence from others at the poll, and that there was "a free ballot and a fair count."

**4. Elections I a—In order to set aside an election it must appear that action was brought with due diligence and in good faith.**

In order for the taxpayers of a municipality to set aside the result of an election therein, it is required that they must not unduly delay their action for that purpose, and it must appear that the rights of innocent parties have not intervened, and that the action was brought in good faith, with reasonable diligence, and sets forth a substantial cause, or the action will be dismissed.

APPEAL by plaintiffs from *Schenck, J.*, and a jury, at October-November Term, 1929, of SWAIN. No error.

This is a civil action brought by the plaintiffs against the defendants for the purpose of having chapter 67 of the Private Laws of the General Assembly of North Carolina passed at the session of 1927, and chapter 215, Private Laws of the General Assembly of North Carolina, session 1927, declared unconstitutional and void, and an election held under said acts attempting to enlarge the town limits of the town of Bryson City declared null and void, and for a permanent injunction enjoining the defendants from collecting town taxes within the territory described in the complaint in this action.

At the close of all the evidence defendants renewed their motion theretofore made at the close of plaintiff's evidence to dismiss the action and for judgment as of nonsuit. Motion denied; defendants excepted. Upon

the conclusion of all the evidence, and following the ruling of the court for judgment as of nonsuit, the parties, plaintiffs and defendants, agreed that the issues theretofore tendered by the court, should be answered as appears in the record, as if answered by the jury, and upon said issues being so answered defendants tendered to the court the following judgment, which the court signed:

"This cause coming on for hearing at this the October Term, 1929, of Swain County Superior Court before Honorable Michael Schenck, judge presiding, and a jury, and same being heard upon the following issues, to wit:

1. On what day was the election mentioned in the several acts set forth in the pleadings called and held? Answer: Tuesday, the 19th day of April, 1927.

2. Did the ballots furnished and voted at said election have printed upon them 'Official ballot on City Proposition, City of Bryson City,' and bear the fac simile of the city clerk? If not, what was printed on said ballots? Answer: No, there was printed on such ballots the following words and figures, to wit: '(   ) For Ratification. (   ) Against Ratification.'

3. Were booths, or a booth, furnished to be used by the voters in marking their ballots? Answer: No.

4. Were there adjoining rooms to the court room, where the election was held, that could be used as a place for marking tickets, and if so, how many? Answer: Yes, two such rooms.

5. Were guard rails placed around the polling place and ballot boxes? Answer: No, except the bar rail of the court room.

6. Were persons admitted or allowed by the election officials about the ballot boxes while voters were casting their votes, other than the voters and election officials? Answer: Yes.

7. Were two watchers appointed by the city governing body of judges of election to attend the polling place to assist the voters? Answer: Yes.

8. Were persons permitted or allowed to electioneer by the election officers in the court room where said election was being held about the polling place and was such electioneering carried on during the time when the ballots were being cast at said election? Answer: No.

9. Does the description of land included in section 1, chapter 215, Private Laws of 1927, include land not included in the description of land set forth in section 1 of chapter 67, Private Laws of 1927? Answer: Yes.

10. Were any of the voters, who voted in the election held 19 April, 1927, in the town of Bryson City, interfered with or prevented from voting a free ballot, and if so, how many? Answer: No.

That after all the evidence, which had been offered by the plaintiffs and the defendants, counsel representing the plaintiffs and defendants agreed that said issues should be answered by the jury as set forth above.

That all the aforesaid issues were answered, by consent of the parties, plaintiffs and defendants, through their attorneys, with the same force and validity as if the jury empaneled in said cause had answered same. And the court being of the opinion that the election in question, held on 19 April, 1927, in the town of Bryson City, was in all respects valid: It is, therefore, on motion of Edwards & Leatherwood, counsel for defendants, considered, ordered, adjudged and decreed that the plaintiffs take and recover nothing by this action, and that the same be dismissed; that the restraining order heretofore issued by the court be, and the same is hereby, in all respects, dissolved, and that the defendants have and recover of the plaintiffs their cost in this action to be taxed by the clerk of this court."

To the signing of the foregoing judgment the plaintiffs excepted and assigned error. Plaintiffs tendered judgment, the court below refused to sign same and plaintiffs excepted, assigned error and appealed to the Supreme Court.

The other facts will be set forth in the opinion.

*Moody & Hall for plaintiffs.*
*Edwards & Leatherwood for defendants.*

CLARKSON, J. The General Assembly of North Carolina passed an act to incorporate the town of Charleston in Swain County, N. C. It was passed in accordance with Article II, section 14, of the Constitution of North Carolina, and ratified 3 February, 1887, chapter 11, Private Laws of North Carolina, 1887. In 1889 the name was changed by the General Assembly from Charleston to Bryson City. Chapter 4, Private Laws 1889. The original size of the old town was around 500 acres— "one-half mile from the courthouse in all directions." An act was passed by the General Assembly of North Carolina to enlarge the corporate limits of the town of Bryson City, and to provide for an election. Chapter 67, Private Laws of 1927. The enlarged town comprises about 2,600 acres. This act was passed in accordance with Article II, section 14, of the Constitution. This act said: "That the corporate limits of the town of Bryson City, Swain County, formerly Charleston, as defined by section 2 of chapter 11, Private Laws of one thousand eight hundred and eighty-seven, be and the same are hereby amended so as to include all of the territory and property within the following boundary (describing same)." This act included the old boundaries.

After the passage of the above act, at the same session another act was passed to correct the boundaries, chapter 215, Private Laws of 1927, by striking out the description of the boundary in the former act and inserting in lieu thereof a new description, but the description in both acts included the old town limits. The description in the latter took in a little more territory. Section 3, chapter 67, of 1927 act, *supra,* provides that *"said election shall be held and conducted as near as may be as other general elections,* and *the same shall be held on Tuesday, 18 April, 1927";* that at the time said election was held all elections held in the county of Swain, including county, town and municipal elections, were required to be held under the Australian Ballot System as provided by chapter 606, Public-Local Laws, enacted by the General Assembly of North Carolina, at its session of 1917, entitled An act to provide the Australian Ballot, said act being amended by chapter 175, Public-Local Laws of 1921, by adding the word "Swain" after the word "Henderson," and before the word "and" in line 2 of section 43A, chapter 606.

Chapter 67 of the Private Laws of 1927, above, authorized the board of aldermen of the town of Bryson City to call an election for the purpose of submitting to the qualified voters residing within the boundary the question of acceptance or rejection of the provisions of the act, and that the same shall be held on Tuesday, 18 April, 1927. Also provided for the appointment of a registrar and two judges to hold said election, and provided for the kind of ballots to be prepared by the election officials. The board of aldermen of said town, pursuant to said act of the General Assembly, called said election to be held at the courthouse in Bryson City on Tuesday, 19 April, 1927, and pursuant to said act and said notice said election was held on Tuesday, 19 April, with the following result: 'Total number of registered voters as shown by poll-book, 602; total number of votes cast, 547; total number for ratification, 317; total number against ratification, 230.' " The governing body of said town gave notice of result and declared that the said act of the General Assembly so ratified declared to be in effect from the said date.

The plaintiffs contend (1) that chapter 215 of the Private Laws of 1927, the act to correct the boundaries, is unconstitutional, in that same was not passed in accordance with Article II, section 14, of the Constitution of North Carolina. We cannot so hold under the facts and circumstances of this case. (2) The plaintiffs contend that the election held pursuant to chapter 67 of the Private Laws of 1927 was invalid. We cannot so hold.

In regard to the *first* proposition: The facts are to the effect that the town of Charleston was incorporated by the General Assembly of 1887. This act was passed in compliance with Article II, section 14, Constitu-

tion of North Carolina, the boundaries of the town included about 500 acres. The General Assembly of 1889 changed the name to Bryson City. The General Assembly of 1927 passed the act to enlarge the boundaries to about 2,600 acres. This act was passed in compliance with Article II, section 14, Constitution of North Carolina. This act struck out the section in reference to the boundaries which were set out in the act incorporating the town in 1887, and inserted in lieu thereof the new boundaries, which included the old boundaries, making the new boundaries about 2,600 acres. Later on in the session chapter 215, Private Laws of 1927, was passed to correct the prior act of the session by striking out the section that had described the boundaries and inserting in lieu thereof a new description which included the old boundaries of 500 acres and practically the new boundary, slightly changing the description in the act passed at the same session, which was passed in compliance with Article II, section 14, Constitution of North Carolina, making about 2,600 acres.

We think this exact question has been passed on in *Lutterloh v. Fayetteville,* 149 N. C., 65, and it is there held: When a municipal charter has been passed in accordance with Article II, section 14, of the Constitution requiring the aye and no vote to be taken on the three several days, it is not necessary for an act annexing territory thereto to be passed in like manner to confer authority for the levying of taxes within the territory annexed. At page 69 it is said: "Another and final objection made to the act of annexation is, that the object sought to be accomplished by it, in the mode provided, is beyond the power of the General Assembly, because it authorizes annexation, and consequently, taxation, without the consent of those who are affected by it. We have held in common with all the courts of this country, that municipal corporations, in the absence of constitutional restrictions, are the creatures of the legislative will, and are subject to its control; the sole object being the common good, and that rests in legislative discretion. *Dorsey v. Henderson,* and *Perry v. Commissioners,* at this term; *Manly v. Raleigh,* 57 N. C., 372. Consequently, it follows that the enlargement of the municipal boundaries by the annexation of new territory, and the consequent extension of their corporate jurisdiction, including that of levying taxes, are legitimate subjects of legislation. In the absence of constitutional restrictions, the extent to which such legislation shall be enacted, both with respect to the terms and circumstances under which the annexation may be had, and the manner in which it may be made, rests entirely in the discretion of the Legislature. With its wisdom, propriety or justice we have naught to do." *Cotton Mills v. Waxhaw,* 130 N. C., 293; *Commissioners v. Commissioners,* 157 N. C., 515; *Reed v. Engineering Co.,* 188 N. C., 39; *State v. Jennette,* 190 N. C., 96; *O'Neal*

*v. Mann,* 193 N. C., at p. 161; *Hailey v. Winston-Salem,* 196 N. C., 17; *Holmes v. Fayetteville,* 197 N. C., at p. 746.

It will be noted that under the *Lutterloh case, supra,* as the original act passed in 1887 was in compliance with Constitution of North Carolina, Article II, section 14, the extension acts of 1927 need not comply with Article II, section 14. Both the acts of 1927 that extended the boundaries had in them the original boundaries as contained in the act of 1887, incorporating the municipality. The striking out of the original boundaries in the act of 1887 and substituting in lieu the new boundaries in the acts of 1927, which included the boundaries as set forth in the act of 1887, was an immaterial change. It can be readily seen that the change was merely to make a simpler description of the boundaries of the old and new territory, there was no repeal of the old town limits. We cite below certain decisions of this Court in regard to material and immaterial changes:

In *Brown v. Commissioners,* 173 N. C., at p. 599, it is said: "It is admitted the bill passed the Senate in accord with the Constitution, but it was amended, and the amendment was concurred in by the House without recording the ayes and noes. It was not necessary that the House observe the constitutional requirement in concurring in the Senate amendment, as it was immaterial and consisted only in striking out the name of one commissioner and substituting another. The amendment did not broaden the scope of the act or affect its financial features. *Glenn v. Wray,* 126 N. C., 730; *Brown v. Stewart,* 134 N. C., 357."

In *Claywell v. Commissioners,* 173 N. C., at p. 659, we find the following: "It is the accepted position that when a material amendment is made to a bill of this kind, one coming under this constitutional provision, the required readings and entries on the journal shall be taken anew on the bill as amended. *Cottrell v. Lenoir, ante,* 138; *Cotton Mills v. Waxhaw,* 130 N. C., 293; *Glenn v. Wray,* 126 N. C., 730."

In *Road Commissioners v. Commissioners,* 178 N. C., at p. 65, we find: "But we are of opinion that an amendment of the kind presented here, which purports to change the method of maintaining a separate township road system from a bond issue restricted in amount to current taxation from year to year, indefinite as to time, might, in its practical application, work such a change in the burdens imposed that it could, in no sense, be regarded as immaterial within the meaning of the principle, and must be set aside because it was not passed with the formalities required by the organic law. *Bennett v. Commissioners,* 173 N. C., 625." *Russell v. Troy,* 159 N. C., 366.

In *Person v. Doughton,* 186 N. C., at p. 725, it is said: "Again, the courts will not adjudge legislative acts invalid unless their violation of the Constitution be clear, complete and unmistakable. *Bonitz v. School*

*Trustees,* 154 N. C., 379; *Coble v. Commissioners,* 184 N. C., p. 348. Speaking to this question in a recent case, *Adkins v. Children's Hospital,* 67 L. Ed., 440, the United States Supreme Court said: 'The judicial duty of passing upon the constitutionality of an act of Congress is one of great gravity and delicacy. The statute here in question has successfully borne the scrutiny of the legislative branch of the government, which, by enacting it, has affirmed its validity; and that determination must be given great weight. This Court, by an unbroken line of. decisions from *Chief Justice Marshall* to the present day, has steadily adhered to the rule that every possible presumption is in favor of the validity of an act of Congress until overcome beyond rational doubt.' " *Gunter v. Sanford,* 186 N. C., 452; *Long v. Rockingham,* 187 N. C., 199; *Reed v. Engineering Co.,* 188 N. C., 39; *Hinton v. State Treasurer,* 193 N. C., 496; *Queen v. Commissioners,* 193 N. C., 821.

In *Ogden v. Saunders,* 12 Wheaton, 213, it is held: "That no act should be held unconstitutional unless it is clearly so, beyond a reasonable doubt."

In regard to the *second* proposition: The issues as set forth in the statement of case were answered by consent of the parties to this controversy the same as by a jury. It will be noted that the act provides that the election shall be held on *Tuesday, 18 April,* the act indicating that Tuesday was the 18th, whereas Tuesday was in fact the 19th. This is such a patent error in the bill that it would be too technical to hold that it was material. *Commissioners v. Malone,* 179 N. C., 10; *Flake v. Commissioners,* 192 N. C., 590; 9 R. C. L., p. 998; 20 C. J., p. 102, note 5. Plaintiffs further contend that said election should not be upheld upon the ground that it was not held in strict compliance with the provisions of the Australian Ballot Law applicable to the county of Swain. Section 3 of chapter 67 of the Laws of 1927, provides, among other things: "That said election shall be held and conducted as near as may be as other general elections, and the same shall be held on Tuesday, 18 April, 1927. The board of aldermen at the meeting calling said election shall appoint a registrar and two judges to hold said election. The registrar shall open the registration books and make a new registration of the qualified voters residing within said boundary in accordance with the general election laws. The board of aldermen shall cause to be prepared ballots for said election on which shall be printed the words 'For Ratification' and 'Against Ratification.' Opposite each shall be blank squares; the voter shall indicate by an X in one of the squares for which he desires to vote. If a majority of those voting at said election shall vote for ratification, then this act shall immediately go into effect."

. *Flake v. Commissioners,* 192 N. C., at p. 593, we think disposes of this contention: "If a statute simply provides that certain things shall be done within a particular time or in a certain way, and does not declare that their performance is essential to the validity of the election, they will be regarded as mandatory if they affect the merits of the election and directory if they do not. McCrary on Elections (3 ed.), sec. 190, cited with approval in *Hill v. Skinner,* 169 N. C., 405."

· In *Hill v. Skinner,* 169 N. C., at p. 412, it is held: "The ultimate conclusions from the authorities is thus stated in A. & E. Enc. (2 ed.), at pp. 755, 767: The general principles to be drawn from the authorities are, that honest mistakes or mere omissions on the part of the election officers, or irregularities in directory matters, even though gross, if not fraudulent, will not avoid an election, unless they affect the result, or at least render it uncertain. But if the irregularities are so great that the election is not conducted in accordance with law, either in form or substance, and there are matters of substance that render the result uncertain, or whether they are fraudulent and the result is made doubtful thereby, the returns should be set aside." *Woodall v. Highway Commission,* 176 N. C., 378; *Riddle v. Cumberland,* 180 N. C., 321; *Plott v. Commissioners,* 187 N. C., 125; *Flake v. Commissioners,* 192 N. C., 590; *Montieth v. Commissioners,* 195 N. C., at p. 75-6.

Plaintiff also contends that the election is void on the ground that the voters were not given an opportunity to cast a secret ballot. In *Withers v. Commissioners,* 196 N. C., at p. 537, it is said: "Furthermore, the constitutional provision was intended and designed for the *protection of the voter himself in drawing about him, if he so desired,* the impenetrable veil of secrecy."

From the answers to the issues we think that plaintiffs cannot complain. It appears that there was a "free ballot and a fair count." The election was held in substantial compliance with the statutes. In fact, all the plaintiffs who testified voted "against ratification," but lost. The election was held on 19 April, 1927, and this action was instituted over two years after, on 20 May, 1929.

It is well said in *Jones v. Commissioners,* 107 N. C., at p. 256-7: "But the Court will not grant its aid, so invoked, unless it appears that the plaintiffs have been reasonably diligent—this depending upon the facts and circumstances of the case—in bringing their action. Especially it will not, where they have negligently delayed to bring their action until the rights of innocent parties have accrued. Nor will the courts tolerate, much less encourage, merely captious or vexatious interference with such elections. It must appear that the action was prompted by good faith, reasonable diligence and a substantial cause of action. Otherwise, the plaintiffs cannot have the relief they demand,

and the action will be dismissed. Their right to sue does not depend at all upon the statute of limitation, but upon the application of plain principles of equity, which require that a party seeking relief must, before he is entitled to have the same, do, as to the matter in question, what, in justice, fairness and good conscience he should have done on his part. In cases like the present one, unless such constituent equitable element appears, no sufficient cause of action is alleged."

In the judgment of the court below, we find

No error.