CHIMNEY ROCK COMPANY, A CORPORATION, AND FIRST BANK AND TRUST COMPANY, A CORPORATION, v. THE TOWN OF LAKE LURE, A MUNICIPAL CORPORATION.

(Filed 27 January, 1931.)

1. **Statutes A e—A statute will not be declared unconstitutional unless it is clearly so.**

    A statute will not be declared unconstitutional by the courts unless it manifestly violates some constitutional provision, and all doubt will be resolved in favor of its validity.

2. **Municipal Corporations A a—Act incorporating the town of Lake Lure held valid although lands incorporated are not contiguous.**

    Where two land corporations have for their purpose the exploitation of mountain scenery, the interest of each being closely interwoven with the other, the lands of each connected by a scenic highway, there is no constitutional inhibition upon the Legislature from incorporating the lands of both into the limits of one town because there is a small intervening acreage between the lands incorporated, and an act incorporating the two tracts of land is held valid under the peculiar facts of this case although the tracts are not contiguous, and the municipality so created may lawfully exercise the power to tax lands within the limits conferred by its charter.

3. **Municipal Corporations A c—Municipal charter may not be collaterally attacked, but in interest of public this case is decided on merits.**

    While ordinarily the validity of a charter of a municipality cannot be collaterally attacked, the Supreme Court under the facts and circumstances of this case, decides the appeal upon its merits, it being to the public interest, involving the validity of taxes levied and bonds issued by the municipality.

APPEAL by plaintiffs from *Harding, J.,* and a jury, at August Term, 1930, of RUTHERFORD. No error.

The issues submitted to the jury and their answers thereto were as follows:

"1. Was the Chimney Rock Scenic Company the owners of the lands described in paragraph 3 of the complaint at the time of the incorporation of the town of Lake Lure under the acts of 1927, chapter 179, Private Laws of N. C., subject to the deed of trust then recorded to Chimney Rock Trust Company, trustee, securing an indebtedness to the Chimney Rock Company? Answer: Yes.

2. Are the plaintiffs the present owners of the lands described in paragraph 3 of the complaint? Answer: Yes.

3. Are the lands described in paragraph 3 of the complaint included within the corporate limits of the town of Lake Lure by the acts of incorporation referred to in Issue No. 1? Answer: Yes.

4. Is the land described in paragraph 3 of the complaint, as shown on map marked 'Chimney Rock Company's property,' and the adjoining land represented on the map as the 'Town of Lake Lure,' area 185 acres, separated from the rest of the lines and boundaries of the town of Lake Lure, as set out in chapter 179, acts of 1927, by a strip of land not owned by the plaintiff, or Chimney Rock Mountains, Inc., or the Chimney Rock Scenic Company or other parties named in the act and not surrounded by any lands named in the act? Answer: Yes.

5. Is the charter of the town of Lake Lure void in so far as it confers upon the town of Lake Lure the right to tax the property described in paragraph 3 of the complaint? Answer: No.

6. If so, are the plaintiffs estopped to assert such invalidity? Answer: .......... ."

The court charged the jury that if it believed the evidence as testified to by the witnesses and the documentary evidence offered, it would be their duty to answer the first, second, third and fourth issues "Yes."

Upon the coming in of the issues, the jury having answered them under the direct instructions of the court—first, second, third and fourth issues "Yes," the court as a matter of law, answered the fifth issue "No." The court is of the opinion that it became unnecessary to answer the sixth issue.

The judgment of the court below is as follows: "This cause coming on to be heard before his Honor, W. F. Harding, judge presiding, and a jury, at the August Term, 1930, of this court, and the issues in this cause having been answered as appears in the record: It is hereby considered, ordered and adjudged that the charter of the town of Lake Lure as contained in chapter 179 of the Private Laws of 1927 is valid; that the legal boundaries of said town include the property of the plaintiffs described in paragraph three of the complaint herein, and that the defendant is lawfully entitled to collect taxes thereon; that

judgment herein be entered in favor of the defendant and that the plaintiffs pay the cost of this action to be taxed by the clerk. It is ordered, however, that upon the filing of a good and sufficient bond by the plaintiffs in the sum of $4,500, said bond to be approved by the clerk of this court, the defendant be and it hereby is restrained and enjoined from selling the property of the plaintiffs for the payment of taxes until further order of this court."

The plaintiffs made numerous exceptions and assignments of error and to the judgment as signed, and appealed to the Supreme Court.

*Quinn, Hamrick & Harris and Ryburn & Hoey for plaintiffs.*
*M. L. Edwards, John M. Robinson and Hunter M. Jones for defendants.*

CLARKSON, J. The evidence was to the effect that the town of Lake Lure was incorporated as a municipal corporation by the General Assembly of North Carolina and its charter is set forth in chapter 179, Private Laws of North Carolina, session 1927, and in accordance with its charter it is exercising municipal functions. In its corporate capacity, under the power conferred upon it by the General Assembly it issued and sold a large amount of bonds in the sum of $250,000, for the alleged purpose of making municipal improvements. (1) The Chimney Rock Company, a corporation, has a deed of trust on its property, dated 1 March, 1929, duly recorded, and the First Bank and Trust Company of Hendersonville, N. C., a corporation, is trustee for the bond holders, the principal sum of $77,000 is now outstanding. It is in evidence that Chimney Rock Company owns about 185 acres of land which includes Chimney Rock—spoken of as a natural wonder and located on said property—and there is a scenic road leading to the rock and other improvements. Because of its scenic beauty and natural wonder, the property is operated and exhibited for profit as an amusement enterprise, and that the income amounted to from $40,000 to $47,000 a year. (2) It was in evidence that Chimney Rock Mountains, Inc., comprises about 8,000 acres of land, about 1,500 acres of this is covered by the lake. Highway No. 20 runs parallel with the river on the north side of Rocky River part of the way. Leaving the town of Lake Lure and coming towards Chimney Rock one comes down Highway No. 20, which skirts along the lake and then continues along Rocky Broad River some distance to where the toll road branches off from Highway No. 20. That is what is known as the private or toll road, and runs southeast for a little distance, crosses part of what is called the intervening property and runs back on the Chimney Rock Mountain property and then, after making a number of turns, goes on up to Chimney Rock. It is about three miles long and is a toll road. It becomes a toll road a short dis-

tance after reaching the property of the Chimney Rock Company where toll is collected. That is the only road approach to what is known as Chimney Rock, where there is located Cliff Dweller's Inn and some other cottages. It is a scenic spot where a great many tourists go. Lake Lure is also a scenic spot, and the people who visit one of these spots very frequently visit the other, as they are right together. This road was built up to the top of Chimney Rock before 1916. One drives more than two-thirds of the distance of this road on the Chimney Rock Company's property before coming to the toll gate where they collect toll. The road below the toll gate is traveled by the general public. Unless going to Chimney Rock, one does not travel this road much because the rock is at the end of the road.

The rock is about 100 feet across, with an elevation of 300 feet on the steepest side from the top over to the ground. The rock covers something like one-eighth of an acre. A great deal of the land included in the big boundary of Chimney Rock Mountains, Inc., is mountainous land and about 1,500 acres included in the big boundary is covered by the lake.

Under the act incorporating the town of Lake Lure, ratified 7 March, 1927, the boundaries included (1) the land owned by the Chimney Rock Company, a corporation, about 185 acres on which is "Chimney Rock"; (2) the land owned by the Chimney Rock Mountains, Inc., 8,000 acres about 1,500 acres is Lake Lure. Between these two bodies of land above set forth are two small tracts of land of about 75 acres. The space between the two is about 700 feet across this property. The highway along Rocky Broad River connects the two tracts, and a toll road runs up to "Chimney Rock." Both are scenic spots close together connected by an improved road.

The contentions of the parties has narrowed down to the sole question: Has the General Assembly the power to incorporate the town of Lake Lure and include in its boundary the lands above set forth, known as "Chimney Rock" development, comprising about 185 acres? We think so.

It is contended by the plaintiffs that this cannot be done, as the land is not contiguous. Both are valuable for scenic beauty, one "Chimney Rock" from the base 1,000 feet ascent, and the other "Lake Lure," 1,500 acres of land covered by water. Then again the two places are primarily to attract tourists and visitors during the summer period, and are joined together by a splendid scenic highway—the joinder by the highway, as it were, being like the famous North Carolina Siamese twins.

Ordinarily the lands comprising a city or town are contiguous. The joining of these two scenic places into one town, the peculiar topography of the land for scenic devolpment, comprised of "Lake Lure" and "Chim-

ney Rock," is for legislative discretion, and not for this Court to determine. Policy of legislation is for the people, not courts. *Bond v. Town of Tarboro,* 193 N. C., 248.

"It has been long settled that no court would declare a statute void unless the violation of the Constitution is so manifest as to leave no room for reasonable doubt. The philosophy of our system of government is based on the consent of the governed, subject to constitutional limitations." *Commissioners v. Assell,* 194 N. C., at p. 419; *Kornegay v. Goldsboro,* 180 N. C., at p. 445; *S. v. Revis,* 193 N. C., 192; *Hinton v. State Treasurer,* 193 N. C., at p. 499; *Briggs v. Raleigh,* 195 N. C., 223.

This is an act of the General Assembly, creating the town of Lake Lure, and there is no constitutional provision prohibiting this to be done.

In *Lutterloh v. Fayetteville,* 149 N. C., at p. 70-71, we find: "Judge Dillon, in his work on Municipal Corporations (4 ed.), sec. 185, cites an array of authorities in support of his texts: 'Not only may the Legislature originally fix the limits of the corporation, but it may, unless specially restrained in the Constitution, annex, *or authorize the annexation of, contiguous or other territory* (italics ours), and this without the consent, and even against the remonstrance, of the majority of the persons residing in the corporation or in the annexed territory. And it is no constitutional objection to the exercise of this power of compulsory annexation that the property thus brought within the corporate limits will be subjected to taxation to discharge a preëxisting municipal indebtedness, since this is a matter which, in the absence of special constitutional restriction, belongs wholly to the Legislature to determine.' Such legislative enactments involve no sort of a contract between the General Assembly, on the one part, and the citizens of the locality to be annexed, on the other part."

This "other territory" seems to be modified in the fifth edition of Dillon on Municipal Corporations, sec. 355, note p. 618. But the *Lutterloh* case has long been recognized as authority in this jurisdiction. *Holmes v. Fayetteville,* 197 N. C., 740; *Penland v. Bryson City,* 199 N. C., 140. On the present record, we do not think it should be modified.

In 1 McQuillin Municipal Corp. (2 ed., 1928), part sec. 284, p. 715-16, is the following: "Unless restricted by the Constitution, the Legislature may not only establish the original limits of the municipal corporations, but may alter or change the boundaries at any time by directly annexing or detaching territory contiguous *or otherwise,* dividing or consolidating corporations, or, it may authorize such changes to be made by general or special law unless forbidden by the Constitution, and this may be done without the consent and even against the protest of the corporation, the local authorities or the inhabitants of the communities

affected. This is regarded as a purely discretionary legislative prerogative, and unless the obligations of contracts or vested rights of third persons are impaired by such action, in accordance with the well established rule, the judiciary cannot interfere." *Manly v. Raleigh,* 57 N. C., 370; *Grady v. Lenoir County,* 74 N. C., 101.

In *Vestal v. City of Little Rock,* 15 S. E. Rep., at p. 892-3, we find: "To sustain their first ground of reversal, appellants rely on the fact that the city is on one side and a part of the lands included in the order is on the other side of the Arkansas River; but we do not think this fact conclusive that the lands are not contiguous within the meaning of the act. The river is also included in the land annexed, and is therefore not a break to contiguity, nor an inseparable barrier to complete amalgamation of the communities upon its opposite banks. That intervening rivers do not prevent such amalgamation or the consequent building up and maintaining of a compact city is attested by common observation; and the Supreme Court of Ohio, in construing a provision in the same terms as that relied on, contained in a statute upon which our own appears to have been modeled, held that a city might annex territory on the opposite bank of a large river. *Blanchard v. Bissell,* 11 Ohio St., 96. See, also, *Ford v. Incorporated Town of North Des Moines* (Iowa.), 45 N. W. Rep., 1031."

We are not unmindful of the contention of defendants that plaintiffs cannot attack collaterally the charter, but defendants say: "It involves the existence of the defendant as a municipal corporation, and, therefore, involves the question of whether the defendant town is rightfully exercising over the citizens thereof the authority of a municipal corporation, whether it is rightfully collecting taxes from the citizens, and whether it is rightfully conferring upon the citizens municipal benefits. It is, therefore, very important for all concerned that this matter be decided on the merits as early as possible." The matter is of such public importance that we have considered it on its merits.

In *Newton v. Highway Com.,* 194 N. C., at p. 305 (concerning a public matter), citing numerous authorities, it is said: "Therefore, upon the face of the record, we see no reason why the judgment rendered by the judge below should not be approved. This course has been pursued in a number of cases in this State and permissible under our decisions."

Whatever may be the decisions in other states, we cannot overrule the act of the General Assembly under the peculiar facts of this case; the topography of the land involved, and the fact that the purpose of the developments are for tourists, scenic developments, and the joinder of the two for the benefit of both, with an improved highway connecting the two closely together.

It may be noted that since the act was passed the town has been bonded for improvements and the bonds sold.

SMITH *v.* R. R.

The leading and large owners of stock were financially interested in both corporations that were joined in the legislative enactment that made the town of Lake Lure. These parties were active in getting the charter through the General Assembly, and either participated in or knew of the bond issue. Plaintiffs have brought this action two years after the act was passed, and after the bonds were sold. There are no facts on the record that would justify a court to overthrow this act of the General Assembly. The rule is well settled, "If there is any reasonable doubt it will be resolved in favor of the lawful exercise of their powers by the representatives of the people." *Sutton v. Phillips,* 116 N. C., at p. 504. We find in law

No error.