MRS. O. A. ABBOTT, ET AL. v. THE TOWN OF HIGHLANDS, ET AL.

No. 8030SC796

(Filed 19 May 1981)

**Municipal Corporations § 2— annexation by local act of General Assembly—no unlawful discrimination**

> A local act of the General Assembly whereby the property of plaintiffs was annexed to defendant town was reasonably related to a valid legislative purpose and did not unlawfully discriminate against property owners in the newly annexed area, though plaintiffs would not receive sewer services upon annexation, since their situation in that regard was no different from that of the many original residents of the town who did not receive sewer services; there were adequate mechanisms for eventually providing sewer services for plaintiffs under the local act and under G.S. 160A-216 et seq; and police, fire, rescue, ambulance, utilities, garbage, zoning, street maintenance and recreational services which plaintiffs received from defendant town would be provided them in the same manner in which these services were provided to all other persons in the town. Moreover, the exclusion of undeveloped land used as a golf course from the territories described in the local act did not violate the equal protection of law requirements of the state or federal constitutions.

APPEAL by plaintiffs from *Thornburg, Judge.* Judgment entered 4 June 1980 in Superior Court, MACON County. Heard in the Court of Appeals 5 March 1981.

Plaintiffs-landowners brought this action to have a local Act (S.L. 1979, C.756) annexing their land to the Town of Highlands declared unconstitutional and to have the enforcement of the Act permanently enjoined. From an adverse decision, plaintiffs appealed. Because the trial court stayed its order pending the appeal, the Town of Highlands (Town) cross-appealed alleging that the

stay denied it the power to tax the plaintiffs although it was required by the Act to provide services to the plaintiffs as of 1 July 1980.

Plaintiffs allege that the Act is unconstitutional in that it deprives them of equal protection of the law in violation of Article I, Section 19 of the Constitution of North Carolina and the fourteenth amendment to the Constitution of the United States (1) by its failure to furnish them sewer services on an equal basis with the present residents of the Town; and (2) by its failure to include in its annexation a 105-acre golf course which is totally surrounded by the newly annexed area. Plaintiffs also contend that the Act is unconstitutional because at Easter, 1979 the State Senate adjourned for a period of more than three days (while the House of Representatives did not) without the benefit of a joint resolution allowing such adjournment. This, according to plaintiffs, was a violation of Article 2, Section 20 of the Constitution of North Carolina and makes the Act void because it was not enacted by a regularly constituted General Assembly.

The facts are stipulated and are set forth in a Judicial Stipulation, relevant portions of which are set out below.

1. On 11 July 1977 the Town, pursuant to Chapter 160A of the General Statutes of North Carolina, enacted an ordinance annexing to the Town an area of land identical to the one in dispute in this case.

2. Some landowners in the area affected by the ordinance (including some of the plaintiffs herein) filed a petition for review of said Ordinance in the Macon County Superior Court (Civil Action Number 77CVS153).

3. On 22 September 1977, following a trial, a judgment was entered voiding the attempted annexation on the grounds, among other things, that said "Plan and Ordinance of Annexation fail to provide for services as required by G.S. 160A-35 with respect to water, sewer, . . . ."

4. No appeal was taken from the judgment in Civil Action Number 77CVS153.

5. Prior to 1977, the Town furnished sewer services to its business or commercial district and to *some* apartment houses and residences within the existing Town limits. The Town was

financially unable to extend the sewer services into the area it sought to annex because of the rocky terrain and the variations in elevation between the area sought to be annexed, which was in the southwest portion of Town, and the Town's sewer treatment plant, which was north of Town.

6. On 24 March 1980 the Town enacted its present sewer use ordinance which includes provisions explaining how a landowner can "connect to the available sewer line" and explaining "user fees."

7. For plaintiffs and other persons within the annexed area "willing to install lines and pay the total cost, not only for the hook-ups, but for the main line as well, the Town stands ready to provide sewer services under the present ordinance. There is no existing plan by the Town of Highlands [nor has any money been appropriated] to extend sewer service into the area added by the local Act or into those parts of the existing Town that are not already served except in accordance with the present ordinance."

8. Plaintiffs obtain water service from the golf course located near their properties, and the Town is presently negotiating with the golf course for acquisition of that water system. The Town's present water system serves Town residents and all of the property to be included in the Town under the Act.

9. The Town intends to collect taxes on plaintiffs' property and to enforce all Town regulations.

10. "On or about March 9, 1979, H.B. 728 was introduced in the House of Representatives of the General Assembly of North Carolina."

11. "The Senate of the General Assembly of North Carolina met on Good Friday, April 13, 1979, and adjourned on Friday, 13 April 1979 until the following Tuesday, two o'clock p.m., 17 April 1979, and did not meet at any time between said adjournment and the following Tuesday."

12. "The House of Representatives of the General Assembly of North Carolina met on Good Friday, April 13, 1979, and on the Monday following."

13. "There was no resolution of both Houses of the General

Assembly of North Carolina to adjourn for any period longer than three days, until adjournment in June, 1979."

The trial court made findings of fact in accordance with the Judicial Stipulation, and then set forth its Conclusions of Law. With regard to plaintiffs' equal services claim, the trial court *stated* that plaintiffs were denied equal protection *but concluded* that the legislature did not have to comply with equal protection requirements in creating new boundaries for the Town. Specifically, Conclusion of Law Number 4 reads:

> In the context of the factual background of this case, including the earlier effort by the Town of Highlands to annex property of plaintiffs and the litigation and judgment which followed, S.L. 1979, C. 756, and, as it provides, the addition of plaintiffs' property to the Town of Highlands (with the attendant taxation and enforcement of ordinances and regulations) without providing plaintiffs with equal, or substantially equal, sewer services as the Town of Highlands provides some of its other residents fails to comport with the equal protection of the laws requirements of Article I, Section 19 of the Constitution of North Carolina and Amendment XIV, Section I of the Constitution of the United States at the time the addition of such property to the Town of Highlands is effective; the court concludes, however, that comporting with such requirements is not a necessary prerequisite to the exercise of legislative authority by the General Assembly of North Carolina to create new or additional boundaries of a town.

With regard to the Town's failure to include the 105-acre golf course within its municipal boundaries, the court concluded that the exclusion of the golf course "does not so break contiguity as to make the legislative act illegal or unconstitutional." The court finally concluded that adjournment of the Senate for more than three days at Easter 1979 without a joint resolution was a constitutional violation but that this violation did not make the Act invalid nor affect the General Assembly's ability to enact valid legislation following the adjournment.

*Herbert L. Hyde for plaintiff appellants.*

*Rodgers, Cabler & Henson, by Richard T. Rodgers and J. Edwin Henson, and Womble, Carlyle, Sandridge & Rice, by E. Lawrence Davis, Roddey M. Ligon, Jr. and Anthony H. Brett, and Assistant Attorney General Douglas A. Johnston, for defendant appellees.*

BECTON, Judge.

The purpose of annexation is to provide urbanly-developed areas with governmental services needed therein for public health, safety, protection and welfare. North Carolina has five methods of annexing urbanly-developed areas:

1. By an Act of the General Assembly (before 1947 this was the only method available, and all annexations were by special legislative acts), G.S. 160A-21;

2. By referendum, G.S. 160A-24;

3. On petition of 100% of real property owners in the area sought to be annexed, G.S. 160A-31;

4. By city ordinance if the territory meets the statutory-standards of urban development and if the city demonstrates its ability to provide services to the area to be annexed[1], G.S. 160A-33, *et seq.;*

5. On petition of 100% of the real property owners in non-contiguous satellite areas, G.S. 160A-58.1.

Using method number four above — city ordinance — the Town sought in 1977 to annex plaintiffs' property. The Town was unsuccessful in its efforts however, because it was unable to demonstrate its ability to provide services to the area to be annexed in accordance with G.S. 160A-33, *et seq.* Defeated, but undaunted, the Town sought in 1979 to annex the same area by using method number one above — getting the General Assembly to pass a Local Act, S.L. 1979, C.756.

I

That the General Assembly is by law authorized to enlarge municipal boundaries by the annexation of new areas is clear beyond cavil. Our constitution empowers the General Assembly to determine the municipal limits of the political subdivisions of the State.

The General Assembly shall provide for the organization and government and the fixing of boundaries of counties, cities and towns, and other governmental subdivisions . . .

---

1. This procedure requires the annexing city to develop a report on services and financing and to hold a public hearing.

N.C. Const. art. VII, § 1. As indicated, even though the General Assembly gave municipalities the power, under certain circumstances, to extend their own boundaries, the General Assembly specifically recognized its own power to continue to extend boundaries by local act. G.S. 160A-21 states:

> The boundaries of each city shall be those specified in its charter with any alterations that are made from time to time in the manner provided by law *or by local act of the General Assembly.* (Emphasis added.)

Our Supreme Court has spoken with consistency and clarity on the General Assembly's power to determine municipal boundaries:

> We have held in common with all the courts of this country, that municipal corporations, in the absence of constitutional restrictions, are the creatures of the legislative will, and are subject to its control; the sole object being the common good, and that rests in legislative discretion. *Dorsey v. Henderson,* 148 N.C. 423, and *Perry v. Comrs., ibid.,* 521; *Manly v. Raleigh,* 57 N.C. [370], 372.
>
> Consequently, it follows that the enlargement of the municipal boundaries by the annexation of new territory, and the consequent extension of their corporate jurisdiction, including that of levying taxes, are legitimate subjects of legislation. In the absence of constitutional restriction, the extent to which such legislation shall be enacted, both with respect to the terms and circumstances under which the annexation may be had, and the manner in which it may be made, rests entirely in the discretion of the Legislature. With its wisdom, propriety or justice we have naught to do.

*Lutterloh v. Fayetteville,* 149 N.C. 65, 69, 62 S.E. 758, 760 (1908). *See also Plemmer v. Matthewson,* 281 N.C. 722, 190 S.E. 2d 204 (1972); *Chimney Rock Co. v. Lake Lure,* 200 N.C. 171, 156 S.E. 542 (1931). "Annexation by a municipal corporation is a political question which is within the power of the state legislation to regulate." *Texfi Industries v. City of Fayetteville,* 301 N.C. 1, 7, 269 S.E. 2d 142, 147 (1980). *See also Hunter v. City of Pittsburgh,* 207 U.S. 161, 52 L.Ed. 151, 28 S.Ct. 40 (1907).

In spite of the foregoing general comments, the power of the legislature to expand the boundaries of cities, towns, or other

local units, though great, is not unlimited. The caveat in *Lut-terloh*—that annexation rests in the discretion of the legislature "[i]n the absence of constitutional restrictions" *id.* at 69, 62 S.E. at 760—tells us that a local act is not insulated from judicial review when it is an instrument for circumventing a constitutionally protected right.

## II

With these principles in mind, we address plaintiffs' first contention—that the Act is constitutionally infirm since, as they argue, they will be wrongfully denied sewer services. We are not persuaded that the Act is an instance of over-reaching by the General Assembly or that the General Assembly's involvement in the extension of the Town's boundaries is "suspect" and deserving of close scrutiny.

Traditionally, courts employ a two-tiered scheme of analysis when an equal protection claim is made. *See generally* J. Nowak, R. Rotunda & J. Young, Handbook on Constitutional Law 522-527 (1978); L. Tribe, American Constitutional Law §§ 16-2, 16-6 (1978); *compare Craig v. Boren*, 429 U.S. 190, 210, 50 L.Ed. 2d 397, 415, 97 S.Ct. 451-463 (1976) (Powell, J., concurring) *but see San Antonio Independent School District v. Rodriquez*, 411 U.S. 1, 70, 36 L.Ed. 2d 16, 64, 93 S.Ct. 1278-1315 (1973) (Marshall, J., dissenting).

When a governmental act classifies persons in terms of their ability to exercise a fundamental right, e.g., *Kramer v. Union Free School District No. 15*, 395 U.S. 621, 23 L.Ed. 2d 583, 89 S.Ct. 1886 (1969); *Shapiro v. Thompson*, 394 U.S. 618, 22 L.Ed. 2d 600, 89 S.Ct. 1322 (1969), or when a governmental classification distinguishes between persons in terms of any right, upon some "suspect" basis, e.g.; *Bolling v. Sharpe*, 347 U.S. 497, 98 L.Ed. 884, 74 S.Ct. 693 (1954), the upper tier of equal protection analysis is employed. Calling for "strict scrutiny", this standard requires the government to demonstrate that the classification is necessary to promote a compelling governmental interest. E.g., *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 39 L.Ed. 2d 306, 94 S.Ct. 1076 (1974).

When an equal protection claim does not involve a "suspect class" or a fundamental right, the lower tier of equal protection analysis is employed. E.g., *Vance v. Bradley*, 440 U.S. 93, 59 L.Ed. 2d 171, 99 S.Ct. 939 (1979). This mode of

analysis merely requires that distinctions which are drawn by a challenged statute or action bear some rational relationship to a conceivable legitimate governmental interest. E.g., *New Orleans v. Dukes*, 427 U.S. 297, 49 L.Ed. 2d 511, 96 S.Ct. 2513 (1976); *Hagans v. Lavine*, 415 U.S. 528, 39 L.Ed. 2d 577, 94 S.Ct. 1372 (1974).

*Texfi Industries v. City of Fayetteville*, 301 N.C. at 10-11, 269 S.E. 2d at 149. This case does not involve an infringement of a fundamental right. This case presents no issues involving discrimination on account of race or national origin or on the bases of any other suspect classifications. *See, e.g., Yick Wo v. Hopkins*, 118 U.S. 356, 30 L.Ed. 220, 6 S.Ct. 1064 (1886); *Gomillion v. Lightfoot*, 364 U.S. 339, 5 L.Ed. 2d 110, 81 S.Ct. 125 (1960); *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach*, 493 F. 2d 799 (5th Cir. 1974). Consequently, our equal protection analysis (under both the federal and state equal protection provisions) is to determine on the facts of this case if the Act is reasonably related to a valid legislative purpose. *See Watson v. Maryland*, 218 U.S. 173, 54 L.Ed. 987, 30 S.Ct. 644 (1910) and *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 55 L.Ed. 369, 31 S.Ct. 337 (1911).

We conclude that the Act is reasonably related to a valid legislative purpose and that the Act does not unlawfully discriminate against property owners in the newly annexed area for the following reasons.[2]

The record does not show that the plaintiffs will be the victims of unlawful discrimination in the provision of sewer services. First, this is not a case where all original residents of the Town receive sewer service, and none of the newly annexed residents of the Town whose lands are described in the Act will receive such service. The Judicial Stipulation is clear. The Town "furnishes sewer services to its business or commercial district and to some apartment houses and residences within the existing town limits, . . . The [Town] also provides water services to its residents and to some property outside its corporate limits," including property

2. Although the trial judge ultimately reached the same conclusions we reach, we find error in the following statement by the trial judge prefacing Conclusion of Law Number 4: "[T]he addition of plaintiffs' property to the Town of Highlands (with the attendant taxation and enforcement of ordinances and regulations) without providing plaintiffs with equal, or substantially equal sewer services as the Town of Highlands provides some of its other residents fails to comport with the equal protection of the laws requirements . . ."

of some of the plaintiffs. The Town has sought to provide water and sewer services to its commercial properties and to property with a high population density (apartment complexes). Although plaintiffs will not receive sewer services upon annexation, their situation in this regard is no different from that of the many original residents of the Town who do not receive sewer services.

A crucial second point is that there are adequate mechanisms for eventually providing sewer services for plaintiffs under the ordinance and under 160A-216 *et seq.* The Town's 16 May 1979 sewer use ordinance contains separate articles concerning use of public sewers, use charges, and sanitary sewer extensions. The fact that sewer services can only be made available to plaintiffs at some cost or "user fee" does not invalidate the Act. Moreover, G.S. 160A-237 provides a procedure for establishing sewer services or extending sewer services in all North Carolina Municipalities. G.S. 160A-216(4) (Supp. 1979) provides that the statutory special assessment procedure may be used for the construction of "sewage collection and disposal systems of all types, including septic tank systems and other on-site collection or disposal facilities or systems." So, even if traditional sewer lines cannot economically be installed to provide services to plaintiffs, this legislation authorizes the Town to provide sewer services by the use of alternative methods.

Finally, appellants do not deny that the police, fire, rescue, ambulance, utilities, garbage, zoning, street maintenance and recreational services which they receive from the Town will be provided them in the same manner in which these services are provided to all other persons in the Town. Consequently, because sewer service is but one of a host of municipal services which a resident of a municipality may receive, we do not believe that the Town's failure to provide one of many essential services is sufficient *on these facts* to declare the Act altering the municipal boundaries to be unconstitutional.

## III

Plaintiff's second constitutional argument is that the Act's failure to include a golf course within the municipal boundaries of the Town denies them equal protection. The General Assembly in its discretion added new territory to the Town but excluded an island or enclave therein, used as a golf course, from the boundaries of the Town. Although plaintiffs state in their brief that "the idea of a town includes the notion of contiguity and cohesive-

ness," plaintiffs nowhere suggest the presence of a "constitutional restriction" limiting the power of the legislature under *Lutterloh v. Fayetteville.* Plaintiffs allege that they "are not treated in the same way," but have failed to show in what way they are treated differently. Indeed, they have not shown that the General Assembly's action in any way harmed them or that the exclusion of the golf course affected them any differently from the way it affects all other residents of the Town.

Contiguity and cohesiveness are not constitutionally required in this annexation proceeding under G.S. 160A-21,[3] *see Chimney Rock Co. v. Lake Lure,* 200 N.C. 171, 156 S.E. 542 (1931). And, unless contiguous areas are excluded for constitutionally impermissible reasons, we cannot substitute our judgment for that of the legislature. The legislative judgment may have been based on the fact that the excluded land contains no structures and would obviously require little or no municipal services. We conclude that the exclusion of undeveloped land used as a golf course from the territories described in the Act does not violate the equal protection of law requirements of the state or federal constitutions.

### IV

We treat plaintiffs' final contention — that the Senate's adjournment without a joint resolution of both houses of the General Assembly invalidates the Act — summarily. Our review of the record indicates that the Senate adjourned on Friday, 13 April 1979 and resumed its session on Tuesday, 17 April 1979. Because it is clear that the Senate was adjourned for a period of three days only — Saturday, Sunday and Monday — there is absolutely no evidence that it adjourned for more than three days.

North Carolina Constitution Article II, Section 20 provides:

Powers of the General Assembly. Each house shall . . . sit upon its own adjournment from day to day, . . . The two houses may jointly adjourn to any future day or other place. Either house may, of its own motion, adjourn for a period not in excess of three days.

Even if the adjournment had been for more than three days, the recess could not serve as the basis for declaring legislation enacted by the General Assembly to be unconstitutional.

---

3. Non-contiguous satellite annexation is specifically authorized pursuant to G.S. 160A-58.1. *See Hawks v. Town of Valdese,* 299 N.C. 1, 261 S.E. 2d 90 (1980) for a detailed analysis of the requirements of "contiguity" and "cohesiveness."

V

The Town cross-assigns as error the trial court's decision to stay its judgment pending appeal which prohibited the Town from taxing plaintiffs pending this appeal. The plaintiffs won round one in 1977—their equal protection challenge was upheld in 77CVS153. Even in this their second attempt to thwart the Town's effort to annex their property, plaintiffs convinced the trial judge that the Act "failed to comport with the equal protections of the law." Although the trial judge ultimately concluded that the equal protection violation did not constitute grounds for invalidating the Act, we cannot say that the plaintiffs' claims were wholly frivolous. There were some likelihood that plaintiffs would have prevailed on appeal and thus have been irreparably injured. Consequently, we find no abuse of discretion in the judge's decision to stay the judgment pending appeal. In this case, we find

No prejudicial error.

Judge VAUGHN and Judge WELLS concur.