THOMAS HAWKS, ET AL., PETITIONERS v. THE TOWN OF VALDESE, RESPONDENT

No. 56

(Filed 8 January 1980)

1. **Municipal Corporations § 2.2— parcels separated by previously annexed satellite—no annexation as one area**

    Two parcels of land which are completely separated from each other by a previously annexed satellite area may not be annexed as one area since the use and subdivision tests prescribed by G.S. 160A-36(c) for determining whether an "area to be annexed" is "developed for urban purposes" cannot be applied to such area but must be applied to each parcel as a separate "area to be annexed."

2. **Municipal Corporations § 2.3— annexation—area contiguous only to boundaries of satellite**

    Territory which is contiguous solely to the boundaries of a satellite area does not satisfy the statutory requirement that the area to be annexed in an involuntary annexation proceeding under G.S. 160A-33 *et seq.* be adjacent or "contiguous" to the "municipal boundaries" of the city seeking annexation, since the terms "municipal boundary" and "contiguous area" in G.S. 160A-36 and G.S. 160A-41(1) remain unaltered by the enactment of statutes permitting the annexation of noncontiguous satellite areas and refer exclusively to the primary corporate limits and areas which abut the primary corporate limits.

3. **Municipal Corporations § 2.3— external boundaries of area to be annexed—inclusion of distance around satellite boundaries**

    Where an area to be annexed was almost severed by a satellite which had previously been annexed, and the two portions of such area were connected only by a 30 foot wide strip of land which lies adjacent to the northern

1

boundary of the satellite, the satellite itself could not be included as part of the area to be annexed in calculating the external boundaries of the area, and the distance around the western, northern and eastern boundaries of the satellite must be included in the measurement to determine whether the area to be annexed satisfies the statutory requirement that at least one-eighth of the aggregate external boundaries of the area must coincide with the municipal boundary.

PETITIONERS appealed to the Court of Appeals from judgments of *Ferrell, J.*, 4 September 1978 Non-Jury Civil Session, BURKE Superior Court.

Prior to determination by the Court of Appeals, we certified the case for initial appellate review by the Supreme Court.

Pursuant to the provisions of G.S. 160A-38, petitioners in apt time filed a petition in the Superior Court of Burke County seeking review of the action of the governing board of the Town of Valdese in adopting ordinances under which certain areas of land were annexed to the Town of Valdese, including lands and property belonging to petitioners. Petitioners allege they will suffer material injury by reason of the failure of the Town of Valdese to comply with annexation procedures or to meet the requirements contained in G.S. 160A-36 as they apply to the property of each petitioner.

At the conclusion of the hearing before Judge Ferrell, he made the following pertinent findings of fact:

1. The Town of Valdese at all times pertinent had a population of less than 5,000.

2. The Town of Valdese prepared a report as required by G.S. 160A-35 showing, among other things, that the areas to be annexed met the requirements of G.S. 160A-36.

3. The Town of Valdese had adopted a resolution of intent to consider annexation of Area 1 and Area 2, the boundaries of such areas being described in each resolution, and gave notice of the date, hour, and place of a public hearing to be held on the matter.

4. Notice of said intent and public hearing was published as required by law.

5. Thereafter, on 1 May 1978, the Town of Valdese approved the report and made it available to the public.

6. A public hearing was held on 22 May 1978 at the time and place set forth in the notice. A representative of the Town explained the report, and all persons affected by the proposed annexation, as well as all residents of the Town, were given an opportunity to be heard.

7. On 5 June 1978, the Town of Valdese passed ordinances annexing Area 1 and Area 2, both effective 30 June 1978.

8. Each annexation ordinance contained a statement of intent to provide services to Area 1 and Area 2 as required by G.S. 160A-35 and contained a specific finding that by 30 June 1978 the Town would have funds appropriated in sufficient amount to finance construction of new water and sewer lines found necessary in the report. Each ordinance adopted as aforesaid contained metes and bounds description of the particular area annexed.

9. The reports of annexation and the annexation ordinances contained statements that the Town Council specifically found and declared that the described territories met the requirements of G.S. 160A-36 in that the total areas to be annexed met the following standards:

(a) Each area is adjacent and contiguous as defined in G.S. 160A-41(1) as of 17 April 1978, the date when the annexation proceedings were begun.

(b) At least one eighth of the aggregate external boundary line of both Area 1 and Area 2 coincided with the primary corporate boundary of the Town of Valdese.

(c) No part of the areas to be annexed is included within the boundary of another incorporated municipality.

(d) Both Area 1 and Area 2 are developed for urban purposes in that more than 60 percent of the total number of lots and tracts in each area is used for residential, commercial, industrial, institutional, governmental purposes, and more than 60 percent of the total residential and undeveloped acreage consists of lots and tracts five acres or less in size.

10. Area 1 lies north of the primary corporate limits of Valdese. It consists of tracts located on either side of a 27.132

acre tract owned by the Town of Valdese and a part of the Town by reason of satellite annexation proceedings effective 20 April 1977. One of the tracts making up Area 1 abuts directly only on the northern boundary of the satellite, while the other tract making up Area 1 abuts directly on both the southern boundary of the satellite and the northern boundary of the primary corporate limits of the Town of Valdese.

11. Area 2 lies east of the primary corporate limits of Valdese. It consists of one tract which is nearly severed by a tract which is a part of the Town by reason of a prior satellite annexation proceeding. Area 2 abuts directly on the eastern boundary of the primary corporate limits of Valdese. The portions of Area 2 adjacent to the western and eastern boundaries of the satellite are connected to each other by a strip of land 30 feet in width which is adjacent to the northern boundary of the satellite. This connecting strip of land constitutes one-half of the right-of-way for Highway U.S. 64-70.

12. In determining the extent to which the aggregate external boundaries of Area 1 were contiguous with the primary municipal boundaries of Valdese, respondent measured the aggregate external boundaries of Area 1 as if the satellite were included within Area 1 for such purpose and no other.

13. In determining the extent to which the aggregate external boundaries of Area 2 were contiguous with the primary municipal boundaries of Valdese, respondent measured the aggregate external boundaries of Area 2 as if the satellite were included in Area 2 for such purpose and no other. Thus, the Town did not include the footages of the eastern, northern and western satellite boundaries in computing the aggregate external footage of "the area to be annexed" designated as Area 2.

Some additional findings not pertinent to decision have been omitted. Other findings may be discussed in more detail in the opinion.

Judge Ferrell concluded that the actions of the Town of Valdese in annexing Area 1 and Area 2 were in all respects valid. Accordingly, the annexations of those areas, effective as of 30 June 1978, were affirmed. Petitioners appealed, assigning errors discussed in the opinion.

*Herbert L. Hyde and G. Edison Hill, attorneys for petitioner appellants.*

*Mitchell, Teele, Blackwell & Mitchell, by Hugh A. Blackwell and H. Dockery Teele, Jr., attorneys for respondent appellee.*

HUSKINS, Justice.

Petitioners challenge the validity of two annexation ordinances adopted by the Town of Valdese on 5 June 1978 as the culmination of simultaneous annexation proceedings held pursuant to the terms of G.S. 160A-33, *et seq.* The two annexed areas are referred to as Area 1 and Area 2.

One feature common to both Areas 1 and 2 is that they are either nearly or completely severed by *noncontiguous* tracts of land which have been previously annexed by the Town of Valdese as "satellite" areas pursuant to authority granted in G.S. 160A-58, *et seq.* It would be helpful, therefore, to review briefly the contiguity requirement and exceptions thereto in our statutory scheme for annexation before considering separately the merits of each annexation ordinance.

In North Carolina's statutory scheme for annexation, contiguity is an essential precondition to the involuntary annexation of outlying territories by cities. Thus, in annexation by all cities, whether less than 5,000 or more than 5,000 in population, the "total area to be annexed" must meet the following requirements, among others:

"(1) It must be adjacent or contiguous to the municipality's boundaries at the time the annexation proceeding is begun.

(2) At least one eighth of the aggregate external boundaries of the area must coincide with the municipal boundary.

(3) No part of the area shall be included within the boundary of another incorporated municipality."

G.S. 160A-36(b); 160A-48(b). "Contiguous area" is defined as "any area which, at the time annexation procedures are initiated, either abuts directly on the municipal boundary or is separated from the municipal boundary by a street or street right-of-way, a creek or river, the right-of-way of a railroad or other public serv-

Hawks v. Town of Valdese

ice corporation, lands owned by the municipality or some other political subdivision, or lands owned by the State of North Carolina." G.S. 160A-41(1); 160A-53(1).

In 1973 the General Assembly enacted a limited exception to the requirement of contiguity by making it possible for a city to "annex an area not contiguous to its primary corporate limits" upon receipt of a valid petition requesting annexation "signed by all of the owners of real property in the area described therein. . . ." G.S. 160A-58.1(a). Substantial restrictions are imposed on the type of noncontiguous area which may be proposed for annexation:

"(1) The nearest point on the proposed satellite corporate limits must be not more than three miles from the primary corporate limits of the annexing city.

(2) No point of the proposed satellite corporate limits may be closer to the primary corporate limits of another city than to the primary corporate limits of the annexing city.

(3) The area must be so situated that the annexing city will be able to provide the same services within the proposed satellite corporate limits that it provides within its primary corporate limits.

(4) If the area proposed for annexation, or any portion thereof, is a subdivision as defined in G.S. 160A-376, all of the subdivision must be included.

(5) The area within the proposed satellite corporate limits, when added to the area within all other satellite corporate limits, may not exceed ten percent (10%) of the area within the primary corporate limits of the annexing city."

G.S. 160A-58.1(b). If the petition appears to be valid, the area meets all the standards of G.S. 160A-58.1(b), and the council determines that the "public health, safety and welfare of the inhabitants of the city and of the area proposed for annexation will be best served by the annexation, the council *may* adopt an ordinance annexing the area described in the petition." G.S. 160A-58.2 (emphasis added).

## Area 1

Area 1 lies north of the primary corporate limits of Valdese and is completely severed by a noncontiguous 27.132 acre tract which was annexed by the Town pursuant to a prior satellite annexation proceeding. The portion of Area 1 located southeast of the satellite area abuts directly on *both* the southern boundary of the satellite area and the northern boundary of the primary corporate limits of Valdese. On the other hand, the portion of Area 1 located northwest of the satellite abuts *solely* on the northern boundary of the satellite area.

[1] The first question presented for review is whether Area 1 may be annexed as one area notwithstanding the fact that one part of Area 1 is completely separated from the other by a previously annexed satellite area.

We hold that Area 1 may not be annexed as one area because the tests provided in G.S. 160A-36(c) for determining whether an "area to be annexed" is "developed for urban purposes" cannot be applied to Area 1 as presently constituted.

In addition to being contiguous to the municipality's primary boundaries, the total area to be annexed must "be developed for urban purposes." G.S. 160A-36(c). An area is developed for urban purposes if no less than 60 percent of the lots in the area are in actual use other than for agricultural purposes and if the area is subdivided such that no less than 60 percent of the total acreage, "not counting the acreage used at the time of annexation for commercial, industrial, governmental, or institutional purposes, consists of lots and tracts five acres or less in size." G.S. 160A-36(c).

The use and subdivision tests prescribed by G.S. 160A-36(c) yield accurate results only if applied to a land area which encompasses only unannexed territory. This is so because these tests require a determination of the *percentage* of lots being used for "urban purposes" and the *percentage* of "total acreage" subdivided into lots of five acres or less. It takes no great mathematical insight to realize that such percentage figures will be skewed and inaccurate if not based on data from *all* the acreage and lots encompassed by the land area under consideration.

Area 1, as presently constituted, necessarily encompasses three parcels of land. One of these parcels has been previously an-

nexed in a satellite proceeding and lies between two unannexed parcels. Thus, in order to obtain accurate percentage figures for the land area encompassed by Area 1, it is necessary to consider not only the uses of lots and subdivision of acreage in the two unannexed parcels but also the land uses and subdivision in the previously annexed parcel. The problem with doing this, of course, is that the satellite area can no longer be considered an "area to be annexed" by virtue of its prior annexation. As a result, land use and subdivision data from the satellite area cannot be considered in determining percentage figures for Area 1. Since the percentages calculated by the Town of Valdese for Area 1 are of necessity based only on data from two of the three parcels encompassed by Area 1, it follows that such figures are distorted and inaccurate.

In effect, the prior annexation of the intervening satellite area precludes the two unannexed, noncontiguous parcels in Area 1 from ever being considered as part of one entity or "area to be annexed" for purposes of applying the use and subdivision tests of G.S. 160A-36(c). Accordingly, it is impossible to determine whether Area 1, as presently constituted, has attained the level of urban development required by G.S. 160A-36(c). The only accurate way to determine whether the two unannexed parcels in Area 1 are developed for "urban purposes" is to apply the use and subdivision tests of G.S. 160A-36(c) to each parcel as a separate "area to be annexed."

The conclusion we reach indicates that Area 1 can never be the subject of one annexation proceeding. Rather, the previously annexed satellite area irrevocably splits Area 1 into two unannexed areas, each of which may be the subject of separate annexation proceedings, and each of which may or may not meet all requirements for annexation.

[2]   Since we hold that Area 1 cannot be annexed as one area, it is not necessary to consider a number of questions which are briefed and argued: (1) whether Area 1 in its present form is contiguous to the municipal boundary of Valdese as required by G.S. 160A-36(b)(1); (2) whether its boundaries follow topographical boundaries wherever practical as required by G.S. 160A-36(d); (3) whether the Town of Valdese correctly calculated degree of land subdivision and types of land uses in Area 1. However, since the

issue may recur in future annexation proceedings involving this same territory, we consider whether the boundaries of a satellite area are the "municipal boundaries" of Valdese for purposes of determining the contiguity of the area to be annexed in an involuntary annexation proceeding. *See* G.S. 160A-36(b)(1).

When the two unannexed areas which presently constitute Area 1 are examined separately with respect to their contiguity to the municipal boundaries of Valdese, it is evident that the unannexed area adjacent to the southeast boundary of the satellite presents no contiguity problems since it also abuts directly on the northern boundary of the *primary* corporate limits of Valdese. However, the contiguity of the unannexed area adjacent to the northwest boundary of the satellite is suspect since its contiguity to the "municipal boundaries" of Valdese is premised *solely* on the fact that it abuts directly on the northern boundary of the satellite.

The question whether the boundaries of such satellite areas constitute "municipal boundaries" is a serious one indeed since a holding that they were municipal boundaries would allow cities to extend their corporate limits by annexing territory contiguous *only* to noncontiguous satellite areas. Thus, cities would be permitted to grow from these noncontiguous areas without ever having to annex the intervening territory between the primary corporate limits and the satellite corporate limits.

The Town of Valdese contends that the boundaries of a satellite area are "municipal boundaries" as that term is used in G.S. 160A-36(b) and 160A-41(1). Valdese reasons that since the area within the satellite is part of Valdese, it follows that the boundaries of the satellite area are likewise the "municipal boundaries" of Valdese. Accordingly, contiguity to the boundaries of the satellite is the same as contiguity to the primary corporate limits of Valdese. Hence, respondent concludes that unannexed areas contiguous solely to satellite boundaries are "contiguous areas" within the meaning of the statutory provisions for involuntary annexation.

Petitioners contend that the term "municipal boundaries" refers solely to the primary corporate limits of Valdese. According to petitioners, the requirement in G.S. 160A-36(b)(1) that the "total area to be annexed" in an involuntary annexation must "be

adjacent or contiguous to the municipality's boundaries" refers solely to the primary corporate limits. Thus, petitioners conclude that an area which is adjacent or contiguous *solely* to satellite boundaries is not a "contiguous area" within the meaning of the statutory provisions for involuntary annexation.

The precise question posed, therefore, is whether territory which is contiguous *solely* to the boundaries of a satellite area satisfies the statutory requirement that the area to be annexed in an involuntary annexation proceeding be contiguous or adjacent to the municipal boundaries of the city seeking annexation. *See* G.S. 160A-136(b)(1); G.S. 160A-41(1). Resolution of this question requires us to consider whether recent legislation authorizing voluntary annexation of noncontiguous areas by cities has altered the definition of contiguity in an involuntary annexation proceeding. Specifically, we must consider whether the meaning of terms such as "contiguous area" and "municipal boundary" in G.S. 160A-36 and 160A-41(1) have been altered by the subsequent enactment of G.S. 160A-58, *et seq.*, which makes possible the annexation of noncontiguous areas.

The instant proceeding is governed by the terms of G.S. 160A-33, *et seq.*, which set out the procedures to be followed and the standards to be met by a city of less than 5,000 population which seeks to annex outlying territories. It will be recalled that among the standards to be met in such proceedings is the requirement that the "total area to be annexed . . . must be adjacent or contiguous to the *municipality's boundaries* at the time the annexation proceeding is begun." G.S. 160A-136(b)(1) (emphasis added). A "contiguous area" is defined, in pertinent part, as any area which "abuts directly on the *municipal boundary*." G.S. 160A-41(1) (emphasis added). At the time G.S. 160A-33, *et seq.*, was enacted in 1959, there were no provisions in the laws of North Carolina for the annexation of noncontiguous areas. Thus, when G.S. 160A-33, *et seq.*, was enacted the term "municipal boundary" referred exclusively to the primary corporate limits of a city and "contiguous area" referred exclusively, with certain exceptions not relevant here, to areas which abut directly on the primary corporate limits.

It now remains for us to determine whether the enactment in 1973 of legislation authorizing the annexation of noncontiguous

areas has altered the definition of contiguity in an involuntary an-
nexation proceeding governed by G.S. 160A-33, *et seq.* We hold
that the definition of contiguity has not been altered. Fortunately,
the conceptual difficulties created by the boundaries of satellite
areas with respect to the definition of contiguity in an involun-
tary annexation proceeding were anticipated and resolved by the
General Assembly in the very legislation which authorized the an-
nexation of noncontiguous areas. In this legislation, it is made
clear that the existence of noncontiguous satellite areas is not to
alter the definitions of "municipal boundary" or "contiguous area"
in an involuntary annexation proceeding governed by G.S.
160A-33, *et seq.* This is done by carefully distinguishing the
"primary corporate limits" of a city from its "satellite corporate
limits." The "primary corporate limits" are defined in pertinent
part as "the corporate limits of a city as defined in its charter,
enlarged or diminished by subsequent annexations . . . of con-
tiguous territory pursuant to [G.S. 160A-33, *et seq.*] . . . ." G.S.
160A-58(2). The "satellite corporate limits" are defined as "the
corporate limits of a noncontiguous area annexed pursuant to this
Part or a local act authorizing or effecting noncontiguous annexa-
tions." G.S. 160A-58(3). Finally, it is provided that "[a]n area an-
nexed pursuant to this Part ceases to constitute satellite
corporate limits and becomes a part of the primary corporate
limits of a city when, through annexation of intervening territory,
the two boundaries touch." G.S. 160A-58.6.

The above definitions establish that *only* the "primary cor-
porate limits" of a city are subject to enlargement by annexation
of contiguous territory pursuant to the procedures for involun-
tary annexation outlined in G.S. 160A-33, *et seq.* It follows, then,
that notwithstanding the existence of satellite areas, the mean-
ings of the terms "municipal boundary" and "contiguous area" in
G.S. 160A-36 and G.S. 160A-41(1) remain unaltered and refer ex-
clusively to the primary corporate limits and areas which abut on
the primary corporate limits. Conversely, satellite corporate
limits are not "municipal boundaries" as that term is used in G.S.
160A-36, and territory which is contiguous *solely* to "satellite cor-
porate limits" is not a "contiguous area" as that term is defined in
G.S. 160A-41(1).

We hold, therefore, that territory which is contiguous *solely*
to the "satellite corporate limits" fails to satisfy the statutory

requirement that the area to be annexed in an involuntary annexation proceeding be contiguous or adjacent to the municipal boundaries of the city which seeks annexation. G.S. 160A-36(b)(1). Territory contiguous *solely* to "satellite corporate limits" is not eligible for annexation until such "satellite corporate limits" become "a part of the primary corporate limits." This occurs when, through annexation of intervening territory, the boundaries of the satellite area and those of the primary town area touch. G.S. 160A-58.6.

Our conclusion that a city may not involuntarily annex territory which is contiguous only to noncontiguous satellite areas is premised not only on the legislative distinction between primary and satellite corporate limits, but also on the meaning and purpose of the concept of contiguity in the law of annexation.

Contiguity has always been viewed as synonymous with the "legal as well as the popular idea of a municipal corporation in this country," which is one of "oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants—that is, a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places. So, as to territorial extent, the idea of a city is one of unity, not of plurality, of compactness or contiguity, not separation or segregation." 56 Am. Jur. 2d, Municipal Corporations, § 69, quoting *City of Denver v. Coulehan*, 20 Colo. 471, 39 P. 425 (1894). Contiguity, then, is an essential component of the traditional concept of a municipal corporation, which is envisioned as a governmental unit capable of providing essential governmental services to residents within compact borders on a scale adequate to insure "the protection of health, safety, and welfare in areas being intensively used for residential, commercial, industrial, and government purposes or in areas undergoing such development." G.S. 160A-33(2).

The element of contiguity helps to preserve the economic and political viability of municipal government. The costly package of services provided by municipal government can be economically maintained only within the compact boundaries fostered by the contiguity requirement. Conversely, the requirement of contiguity discourages prohibitively expensive extension of municipal serv-

ices to noncontiguous areas where municipal services cannot be economically supplied. Moreover, it goes without saying that, from a political standpoint, a compact, contiguous area is more easily governed than one split into diverse, noncontiguous enclaves. Vicinity engenders a unified sense of community identity which facilitates the formation of the consensus essential to effective government. *See generally, City of Denver v. Coulehan,* supra.

Thus, to permit cities to evolve into a number of diverse, noncontiguous town areas is to invite financial and political instability into the structure of municipal government. The short-term benefits to be gained by the expansion of satellite boundaries are far outweighed by the economic loss and general disorder which would attend the collapse of an overextended municipality. Accordingly, statutes governing the extension of corporate limits, such as G.S. 160A-33, *et seq.,* usually provide in express terms that only territory adjacent to the primary corporate limits may be brought within the municipal boundaries by annexation. *See generally,* 2 McQuillin, Municipal Corporations, § 7.20 (3d ed. 1979). Imposition of the contiguity requirement is one means of insuring that the annexation process remains consistent with principles of "sound urban development." G.S. 160A-33(1).

Thus, if the Town of Valdese wishes to annex involuntarily the two unannexed areas on either side of the satellite area, it must first annex the area which abuts directly on *both* the primary corporate limits and the satellite corporate limits. Only after this intervening territory has been successfully annexed is the area which presently abuts solely on satellite corporate limits eligible for annexation. Only then do the satellite corporate limits become part of the primary corporate limits. *See* G.S. 160A-58.6. Only then does the unannexed area which was previously adjacent or contiguous merely to noncontiguous satellite corporate limits become adjacent or contiguous to the municipal boundaries of Valdese as required by the terms of G.S. 160A-36(b)(1).

Finally, we note that simultaneous annexation proceedings are permitted only when a municipality "is considering the annexation of two or more areas which are *all adjacent to the municipal boundary* but are not adjacent to one another. . . ." G.S. 160A-37(g) (emphasis added). In this case only one of the unan-

nexed areas encompassed by Area 1 is adjacent to the primary corporate limits, which constitute the "municipal boundaries" of Valdese for the purpose of determining contiguity. The other unannexed area is adjacent only to the satellite limits, which we have concluded do not constitute the municipal boundaries for purposes of determining contiguity. Thus, under the terms of G.S. 160A-37(g), simultaneous proceedings to annex the two areas encompassed by Area 1 are not permitted.

AREA 2

[3]   Area 2 lies east of the primary corporate limits of Valdese. Somewhat like Area 1, the territory which comprises Area 2 is almost divided by a noncontiguous tract of land which is already part of Valdese by reason of a prior satellite annexation. The satellite area which divides Area 2, however, does not completely sever the connection between those portions of Area 2 lying on either side of it. The portion of Area 2 adjacent to the eastern boundary of the primary corporate limits and the western boundary of the satellite is connected to the portion of Area 2 adjacent to the eastern boundary of the satellite by a strip of land 30 feet in width which lies directly north of and is adjacent to the northern boundary of the satellite. This connecting strip of land constitutes one-half of the right-of-way for Highway U.S. 64-70.

From the above description, it appears that Area 2 is adjacent or contiguous to the primary corporate limits or the municipal boundaries of Valdese by virtue of a 30-foot wide umbilical cord. Thus, with Area 2 the dispositive issue is not whether it is contiguous to the municipal boundaries of Valdese as required by G.S. 160A-36(b)(1), but whether it is contiguous to the extent specified by G.S. 160A-36(b)(2).

G.S. 160A-36(b)(2) provides that "[a]t least one eighth of the *aggregate external boundaries* of the [total area to be annexed] *must* coincide with the municipal boundary." (Emphasis added.) Both parties agree that the boundary of Area 2 coincides with the primary municipal boundary of Valdese for approximately 2,800 feet. Petitioners, however, contend that the Town of Valdese did not properly measure the aggregate external boundaries of Area 2. The contention is sound and must be sustained.

In calculating the aggregate external boundaries of Area 2, the Town of Valdese has assumed that the previously annexed satellite which nearly severs Area 2 is *part of* Area 2—"the area to be annexed." This assumption is expressly made for the sole purpose of determining the aggregate external boundaries of Area 2. For all other purposes, Area 2 does not include the satellite as a part of "the area to be annexed." Application of this assumption significantly shortens the aggregate external boundaries of Area 2. Thus, instead of having to measure all the way around the western, northern, and eastern boundaries of the satellite area, Valdese merely measures along the shorter southern boundary of the satellite. The obvious effect of decreasing the length of the aggregate external boundaries is to increase the *percentage* of external boundary which coincides with the municipal boundary of Valdese. Thus, the method of measurement employed by Valdese decreases the length of the external boundaries of Area 2 to 20,200 feet and increases the percentage of contiguity to 14 percent. Significantly, the method employed by Valdese yields a percentage figure which exceeds the statutory requirement of one eighth or 12.5 percent. G.S. 160A-36(b)(2).

We hold that the method used by Valdese to calculate the external boundaries of Area 2 is not legally authorized. To properly calculate the external boundaries of Area 2, the satellite itself cannot be included as part of the area to be annexed, and the distance *around* the western, northern and eastern boundaries of the previously annexed satellite must be included in the measurement. The record indicates that when the external boundaries of Area 2 are measured in this manner, the percentage of external boundary contiguous to the municipal boundary dips to 11.3 percent. Thus Area 2 does not satisfy the statutory requirement that at least one-eighth of the aggregate external boundaries of the area to be annexed coincide with the municipal boundary of Valdese. *See* G.S. 160A-36(b)(2). Accordingly, we hold that Area 2, as presently constituted, may not be validly annexed by the Town of Valdese in this proceeding.

In light of the foregoing conclusion it is unnecessary to consider other objections raised to the annexation of Area 2.

For the reasons stated the judgments appealed from are

Reversed.