MICHAEL M. AMICK, JUDY J. AMICK, ROBERT V. ARONE, MARIAN B. ARONE, ROY E. BENNETT, PEGGY B. BENNETT, RALPH M. BOUNDS, CONSTANCE W. BOUNDS, BILLY D. BOWERS, CAROL L. BOWERS, ROLLA G. BRYANT, CAROL J. BRYANT, YUNG KI CHANG, SOON SUN CHANG, THOMAS EVANS, BRENDA H. EVANS, HENRY E. FERGUSON, SR., ENRICO GALLINARO, DONALD E. GOESSEL, KATHLEEN F. GOESSEL, G. TED HADDEN, ROBIN C. HADDEN, FREDRICK D. JUDSON, STEPHANIE JUDSON, DAVID C. KNOX, MARIE K. KNOX, RONALD MENICHELLI, DEBORAH L. MENICHELLI, JAMES F. NICHOLS, ELAINE NICHOLS, JEAN A. ROGERS, RANDY S. SINKOE, MARCI A. SINKOE, SIDNEY F. SOOUDI, KAZUYO K. SOOUDI, NORMAN F. STAMBAUGH, III, WILLIAM H. THURSTON, FAYE C. THURSTON, CRAWFORD B. WATSON, HAZEL J. WATSON, ROY ALLEN WILEY, KIM W. WILEY, BRUCE JOHNSON, NANCY JOHNSON, CARY LAWRENCE, GWEN LAWRENCE, FRANK FLOYD, PATRICIA FLOYD, GAILE GORDON, JOANNE GORDON, IRA BOSTIC, HELEN BOSTIC, JACKIE E. PURSER, JR., ZONE C. PURSER, EDWARD SMITH, GIRTHEL SMITH, JAMES K. BOSSBACH, SHIRLEY C. BOSSBACH, JOHN E. ARANT, AND DELORES D. ARANT v. TOWN OF STALLINGS

No. 8820SC1016

(Filed 15 August 1989)

**Municipal Corporations § 2.1 — annexation of subdivisions — requirement that area abut pre-annexation boundary — boundaries of proposed area contrived to meet requirement**

Though the area proposed to be annexed by respondent town did "abut directly" the pre-annexation boundary of the town and thus literally complied with N.C.G.S. § 160A-36(b)(1),

AMICK v. TOWN OF STALLINGS

[95 N.C. App. 64 (1989)]

the purpose of the statute would clearly be contravened by allowing the annexation where respondent's main purpose for the annexation was to annex three subdivisions, none of which were contiguous to the pre-annexation boundaries of the town, and the literal requirements of the statute were to be met by means of gerrymandering or shoestring annexation using very narrow corridors of land to connect the proposed areas for annexation to the town.

APPEAL by respondent from *Albright (W. Douglas), Judge.* Order entered 16 June 1988 in Superior Court, UNION County. Heard in the Court of Appeals 13 April 1989.

*Thomas, Harrington & Biedler, by Larry E. Harrington, for petitioner-appellees.*

*Dawkins & Lee, P.A., by W. David Lee, for respondent-appellant.*

GREENE, Judge.

The Town of Stallings, North Carolina (the "Town") appeals the superior court's judgment remanding a proposed annexation ordinance for amendment of the annexation boundaries to conform to the provisions of Section 160A-36. The record shows the Town, a municipality with a population of less than 5,000, adopted an ordinance extending its corporate limits to include: (1) a strip of land bordering the Town which was 7,411 feet long and varied in width from 50 feet to 200 feet; (2) several tracts known as Wor-Wood Acres, Red Barn Trail, and Rain Forest subdivisions; (3) a corridor to Red Barn Trail subdivision measuring approximately 1,500 feet long and 150 feet wide; and (4) another corridor connecting Red Barn Trail and Wor-Wood Acres approximately 1,800 feet long which varied in width from 165 feet to 250 feet. Only the 7,411 foot strip of land was contiguous to the Town's pre-annexation limits. The following diagram is similar to a trial exhibit and shows the general area to be annexed compared to the pre-annexation Town boundaries:

AMICK v. TOWN OF STALLINGS

[95 N.C. App. 64 (1989)]

Pre-Annexation
Boundary of Town

Boundary of
Annexed Area

The trial court entered the following pertinent findings of fact:

3. The area annexed as described begins at the Mecklenburg County line at the existing Stallings boundary and thence along the Mecklenburg County line for 140 feet, thence in an irregular line roughly parallel with the border of Stallings for 7,411 feet.

4. The width of the 7,411 foot strip bordering Stallings varies from 50 to 200 feet, calculated by the most convenient "intercept lines" as said term is used in the description.

5. The territory located in the "strip" or "loop" of 7,411 feet bears no relationship to any useful or proper municipal need or purpose except satisfying the statutory requirement that ⅛ of the external boundary be contiguous to the annexing municipality, and was included and thereby annexed for no other purpose.

6. The boundary then proceeds approximately 1,500 feet to the Red Barn Trail Subdivision.

7. The 1,500 feet corridor is approximately 150 feet wide so determined by the most convenient "intercept lines."

8. The territory located within the 1,500 feet strip served no useful or proper municipal need or purpose except to extend the annexed territory to the Red Barn Trail Subdivision.

9. The width of the 1,500 feet strip was narrowed to satisfy the statutory requirement that at least 60% of the total number of lots and tracts in the area at the time of annexation be used for residential, commercial, industrial, institutional, or government purposes and for this reason only.

10. The Red Barn Trail Subdivision is then attached to a second subdivision, Wor-Wood Acres by another narrow corridor approximately 1,800 feet long and varying from 165 to 250 feet wide.

11. The territory located in the 1,800 feet strip bears no relationship to any useful or proper municipal need or purpose but exists solely for the purpose of connecting the Red Barn Trail and Wor-Wood Subdivisions.

12. The width of the 1,800 feet strip was narrowed to satisfy the statutory requirement that 60% of the total number of lots be utilized at [the] time of annexation for residential purposes.

13. The subdivisions of Red Barn Trail, and Wor-Wood Acres—Rain Forest are not contiguous to Stallings nor is Red Barn Trail contiguous to Wor-Wood Acres and Rain Forest.

. . . .

Based on these findings, the trial court concluded:

AMICK v. TOWN OF. STALLINGS

[95 N.C. App. 64 (1989)]

1. The annexed subdivisions of Red Barn Trail, Rain Forest, and Wor-Wood Acres were not contiguous to Stallings at the time of annexation.

2. The subdivision of Red Barn Trail was not contiguous to Rain Forest and Wor-Wood Acres at the time of annexation.

3. The area annexed consisting of 7,411 feet bordering Stallings purporting to give contiguity to the annexed area to conform to G.S. 160A-36(2) bore no relationship to any urban or municipal purpose, benefit, or objective, and was configured and included, for no other purpose than to meet the letter of 160A-36.

4. The strip of annexed area connecting Stallings with Red Barn Trail exists and was configured to make the connection only, and benefits Stallings in no other way, and bears no relationship to any urban or municipal purpose, benefit or objective.

5. The strip of annexed area connecting Red Barn Trail with Wor-Wood Acres and Rain Forest exists and was configured to make the connection only and bears no relationship to any proper or useful urban or municipal purpose, benefit or objective.

6. The annexed area and Stallings, when viewed as a whole, represent several bodies, not a collective body, distinct masses, not a unified mass; divergent interests, not a common interest; segregation, not plurality, compactness or contiguity; diverse enclaves, not a unified whole.

7. Such contiguity as exists in the Stallings Plan of Annexation amounts at worst to a subterfuge in effect whereby an attempt is made to circumvent the contiguity requirement and at best . . . a strategy using abstract mathematics to meet the statutory requirement of contiguity, but said Plan does not confer contiguity where no contiguity otherwise existed. As a whole the Stallings Plan of Annexation amounts to a "land grab" by means of a "gerrymandered" or "shoestring" annexation using very narrow corridors of land to connect the proposed areas for annexation to the municipality, resulting in a lack of contiguity.

Pursuant to its authority under Section 160A-38(g)(2), the superior court remanded the ordinance so that the proposed "shoestring" corridors could be amended to conform with the contiguity requirements of Section 160A-36. The Town appeals.

---

The dispositive issue presented by the Town's assignments of error is whether the Town complied with the provisions of Section 160A-36(b) which provides in part:

> The total area to be annexed must meet the following standards: (1) It must be adjacent or contiguous to the municipality's boundaries at the time the annexation proceeding is begun; (2) At least one eighth of the aggregate external boundaries of the area must coincide with the municipal boundary. . . .

N.C.G.S. Sec. 160A-36(b)(1), (2) (1987). When the record submitted in superior court demonstrates on its face substantial compliance with the applicable annexation statutes, "the burden falls on the petitioners to show by competent and substantial evidence that the statutory requirements were in fact not met or that procedural irregularities occurred which materially prejudiced their substantive rights." *Huyck Corp. v. Town of Wake Forest*, 86 N.C. App. 13, 15, 356 S.E.2d 599, 601 (1987), *aff'd per curiam*, 321 N.C. 589, 364 S.E.2d 139 (1988). On appeal from the superior court to this court, the findings of fact made by the trial court "are binding on the appellate court if supported by competent evidence, even if there is evidence to the contrary; conclusions of law drawn from the findings of fact are, however, reviewable *de novo.*" *Id.*

Section 160A-36(b)(1) requires the annexed property be "adjacent or contiguous" to the municipality's boundaries and Section 160A-36(b)(2) requires that one-eighth of the external boundaries of the annexed area "coincide" with the municipality's pre-annexation boundary. Section 160A-36(b) requires contiguity since:

> Contiguity has always been viewed as synonymous with the 'legal as well as the popular idea of a municipal corporation in this country,' which is one of 'oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants—that is, a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places. So, as to territorial extent, the

AMICK v. TOWN OF STALLINGS

[95 N.C. App. 64 (1989)]

idea of a city is one of unity, not of plurality, of compactness or contiguity, not separation or segregation.' . . . Contiguity, then, is an essential component of the traditional concept of a municipal corporation, which is envisioned as a governmental unit capable of providing essential governmental services to residents within compact borders on a scale adequate to insure 'the protection of health, safety, and welfare in areas being intensively used for residential, commercial, industrial, and government purposes or in areas undergoing such development.' G.S. 160A-33(2). . . . Imposition of the contiguity requirement is one means of insuring that the annexation process remains consistent with principles of 'sound urban development.' G.S. 160A-33(1).

*Hawks v. Town of Valdese*, 299 N.C. 1, 12-13, 261 S.E.2d 90, 97 (1980) (citations omitted); *cf.* N.C.G.S. Sec. 160A-33(1) (1987) ("sound urban development" deemed essential to continued economic development); N.C.G.S. Sec. 160A-58.1 (1987) (providing for annexation of non-contiguous areas if landowners petition and other requirements met).

A "contiguous area" is defined as:

any area which, at the time annexation procedures are initiated, either abuts directly on the municipal boundary or is separated from the municipal boundary by a street or street right-of-way, a creek or river, the right-of-way of a railroad or other public service corporation, lands owned by the municipality or some other political subdivision, or lands owned by the State of North Carolina.

N.C.G.S. Sec. 160A-41(1) (1987). The literal contiguity requirements of Section 160A-36(b) and Section 160A-41(1) are apparently satisfied by the Town's ordinance. The proposed annexed area does "abut directly" the pre-annexation boundary of the Town and thus literally complies with Section 160A-36(b)(1). Furthermore, the record indicates the aggregate external boundary line of the area to be annexed is 52,503 feet, of which 7,411 feet are contiguous with the pre-annexation municipal boundary line. This 7,411 foot-long contiguous strip literally complies with Section 160A-36(b)(2) which requires that at least one-eighth of the aggregate external boundaries of the annexed area concide with the municipal boundary.

AMICK v. TOWN OF STALLINGS

[95 N.C. App. 64 (1989)]

Nonetheless, the Town's compliance with the literal requirements of these statutes results in the subversion of the purposes underlying Section 160A-36(b) discussed in *Hawks*. "Where a literal reading of a statute 'will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded.'" *Taylor v. Crisp*, 286 N.C. 488, 496, 212 S.E.2d 381, 386 (1975) (quoting *Freeland v. Orange Co.*, 273 N.C. 452, 456, 160 S.E.2d 282, 286 (1968)). From the testimony offered at trial, it is clear the main purpose of the proposed annexation was to annex the subdivisions of Red Barn Trail, Wor-Wood Acres and Rain Forest, none of which were contiguous to the pre-annexation boundaries of the Town. The Town employee who prepared the annexation plan testified that the only purpose of the narrow corridors shown on the map depicted earlier was compliance with the statutory contiguity standards. The use of narrow "shoestring" corridors to connect a municipality to outlying territory contravenes the policies set forth in *Hawks* in a manner that is not favored by the courts of other jurisdictions. *See* 56 Am. Jur. 2d *Municipal Corporations* Sec. 69 at 126 (1971). The Town's intentional gerrymandering of the annexation boundary creates isolated islands connected to the Town by a single narrow corridor of land: such a "crazy-quilt" boundary is not consistent with "sound urban development" of a municipality "capable of providing essential governmental services to residents within compact borders . . . ." *Hawks*, 299 N.C. at 12, 261 S.E.2d at 97.

We therefore will not construe Section 160A-36(b) to permit a result which would clearly contravene the purpose of the statute. Our holding that the Town's annexation ordinance does not comply with the contiguity requirements of Section 160A-36(b) is consistent with our previous holding in *Huyck*. Unlike this case, the property in *Huyck* which was the "real objective" of that annexation, as well as two other tracts, were all contiguous to the town's pre-annexation boundary. 86 N.C. App. at 17-18, 356 S.E.2d at 602. We recognized in *Huyck* that several jurisdictions disapprove "gerrymandered" or "shoestring" annexation, but found that:

> those cases involve the use of narrow corridors of land to connect the proposed areas for annexation to the municipality, resulting in a lack of contiguity. They are not applicable to the facts before us. In the present case, each of the three portions included in the proposed annexation area is contiguous

STATE v. GIVENS

[95 N.C. App. 72 (1989)]

to the existing Town boundary, and, by using the "railroad strip" as a connector, they are contiguous to each other.

*Id.* at 18, 356 S.E.2d at 602.

The instant case presents a clear example of "shoestring" annexation which was neither presented nor approved in *Huyck* and which we reject as contravening the purposes underlying Section 160A-36(b). Accordingly, we hold the superior court properly remanded the Town's annexation ordinance for amendment of its proposed boundaries, if possible, to conform to the contiguity requirements expressed in Section 160A-36(b).

Affirmed.

Judges ARNOLD and LEWIS concur.