**WILLIAMS v. TOWN OF KERNERSVILLE**

[129 N.C. App. 734 (1998)]

ROBERT GREGORY WILLIAMS, DENVER B. COTTINGHAM, AND WIFE, CHERYL G COTTINGHAM, WILLIAM S. ALLEN, AND WIFE, JACKIE B. ALLEN, DELORES STAFFORD CLARKE, AND HUSBAND, CARL LEWIS CLARKE, DANNY L. DILLON, AND WIFE, KATHRYN REDMAN DILLON, WILLIAM T. GILLIAM, AND WIFE, JULIA S. GILLIAM, ALFRED J. HAMMONDS, AND WIFE, VIOLET HAMMONDS, HUGH GRAY HILL, SR., AND WIFE, WILLIE SUTTON HILL, DAVID MATTHEWS, AND WIFE SHIRLEY S. MATTHEWS, RONALD L. RICHARDS, AND WIFE, LUCILLE G. RICHARDS, DORSEY STEPHEN SIZEMORE, AND WIFE, JULIE M. SIZEMORE, MICHAEL D. STADDON, AND CANDANCE J. STADDON, ROBERT U. STUART, AND WIFE, REBECCA W. STUART, JACK R. TONEY, AND WIFE, PHYLLIS TONEY, CHARLES W. WILES, AND WIFE BETTY WILES, THOMAS A. TUCKER, KENNETH K. MABE, AND WIFE, RHONDA A. MABE, ROBERT L. OGLESBY, AND WIFE, GLORIA F. OGLESBY, CHARLES F. ALLEN AND WIFE, JEANETTE C. ALLEN, WILLIAM D. CISSNA AND WIFE, KATHY ANN CISSNA, ANTHONY C. MULLER AND WIFE, FRANCES E. MULLER, THOMAS FORYT AND WIFE, MARSHA FORYT, INA B. OWEN, MARK J. MATHABANE AND WIFE, GAIL E. MATHABANE, RUSSELL E. DEAN AND WIFE, ANNA MARIE DEAN, JOHN B. KUNZ AND WIFE, MARSHA R. KUNZ, R. WAYNE NELSON AND WIFE, CAROL J. NELSON, THOMAS FREDRICK VAUGHT AND WIFE, LILLIAN D. VAUGHT, ROGER S. CHARMICHAEL AND WIFE, LINDA S. CHARMICHAEL, ROBERT J. McCLELLAN AND WIFE, MARY L. McCLELLAN, BRIAN GREEN, DONNIE W. PRIDDY AND WIFE JANICE G. PRIDDY, ROBERT B. WHITE AND WIFE, NANCY H. WHITE, LEWIS BACKER AND WIFE, KATHLEEN BACKER, KENNETH LAMBERSON AND WIFE, MARY HELEN LAMBERSON, CHARLES F. SNOW, III AND WIFE, SUSAN CAROL SEARS SNOW, ARLINE HOOVER AND HUSBAND, WALLACE HOOVER, DAVID S. ELLIOTT AND WIFE, ANNE T. ELLIOTT, STEPHEN W. LONG AND WIFE, PHYLLIS E. LONG, ALAN C. COMER AND WIFE, LORI W. COMER, CLARKE L. HUBER AND WIFE, LAURIE E. HUBER, PHILIP THOMAS AND WIFE, DONNA B. THOMAS, JESSE B. WILLIAMS AND WIFE, KATHLEEN A. WILLIAMS, EDDY L. MESSICK, CLEMON W. EATON AND WIFE, MARY S. EATON, IMOGENE W. McGEE, HELEN F. ELLIOTT, ROBERT G. WOODS, SHANNON WILSON NELSON, GARY V. NELSON AND WIFE, MARY M. NELSON, AND HORACE V. WILSON, STEPHEN B. PLESS AND WIFE, KAY D. PLESS, JAMES D. MURRAY AND WIFE, BARBARA R. MURRAY, SIDNEY CALDWELL AND WIFE, CONNIE J. CALDWELL, STEPHEN ARMSTRONG AND WIFE, KATHERINE ARMSTRONG, BILL GAITHER AND WIFE, BETTY J. GAITHER, DIANA L. LODDING, JAMES R. SCHRADER AND WIFE, VICTORIA A. SCHRADER, JOYCE WATERS, CHAD CULBERTSON AND WIFE, DONNA W. CULBERTSON, BRUCE E. BAUMBACH AND WIFE, IRIS A. BAUMBACH, JOHN L. GOFORTH, JR., GARY SILER AND WIFE JANICE SILER, CLETUS S. ANGEL AND WIFE MILDRED S. ANGEL, RONALD E. HANKINS AND WIFE, STACY M. HANKINS, MARK SUNTER AND WIFE JANE SUNTER, KENNETH E. JOHNSON, JR., AND WIFE, CYNTHIA S. JOHNSON, STEVEN D. YORK AND WIFE, DONNA L. YORK, JOSEPH P. MITCHELL AND WIFE, SONIA K. MITCHELL TIMOTHY J. GRABUS AND WIFE, CHRISTINA S. GRABUS, HELEN MARSHALL RENEGAR, BENNY O. TADLOCK AND WIFE, JOYCE S. TADLOCK, JOHNNY THOMAS, SR., AND WIFE, GEORGIA THOMAS, BURR BURCHETTE AND WIFE, VIOLA BURCHETTE, RONNIE ANGEL, ARBOR DEVELOPMENT CORPORATION, JIMMY L. LOCKLEY AND WIFE, N. LAVERNE LOCKLEY, ROBERT C. COBLE, JR. AND WIFE, DEBRA L. COBLE AND DAVID FOY AND WIFE, DIANNE FOY, PETITIONERS v. TOWN OF KERNERSVILLE, A MUNICIPAL CORPORATION, RESPONDENT

No. COA97-920

(Filed 16 June 1998)

**1. Municipal Corporations § 87 (NCI4th)— annexation—contiguous area**

An annexed area was not contiguous only to satellite corporate limits and met the requirement of contiguity to the primary

corporate limits where the alleged satellite area now touches and has become part of the primary municipal boundary. N.C.G.S. §§ 160A-58(3), 160A-58.6.

2. **Municipal Corporations § 90 (NCI4th)— annexation—not prohibited ribbon and balloon area**

An area to be annexed was not a prohibited ribbon and balloon annexation where the annexation area is a rectangle and the easternmost side thereof is solidly abutted against the existing municipal limits.

3. **Municipal Corporations § 64 (NCI4th)— annexation—calculation of population density**

A town's method of calculating population density in an area to be annexed met statutory requirements where the town first determined the number of dwelling units in each census block within the annexation area; the average family size for each census block in the annexation area was then determined based upon the 1990 Federal Decennial Census; the number of dwelling units in each census block was then multiplied by the average family size in each block to calculate the estimated population of each block; and the block numbers were then added together to establish the estimated population of the annexation area. N.C.G.S. §§ 160A-48(c), 160A-54.

Appeal by petitioners from judgment entered 13 March 1997 by Judge Howard R. Greeson, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 18 March 1998.

*Adams Hendon Carson Crow & Saenger, P.A., by S.J. Crow and Martin K. Reidinger, for petitioners-appellants.*

*Wolfe and Collins, P.A., by John G. Wolfe, III and John H. Bain, and Womble Carlyle Sandridge & Rice, by Roddey M. Ligon, Jr., for respondent-appellee.*

WYNN, Judge.

Under the provisions of N.C. Gen. Stat. § 160A-50, petitioners brought this action for judicial review of two annexation ordinances adopted by the town council of the Town of Kernersville. One ordinance ("South Annexation Ordinance") sought to involuntarily annex an area to the south of the town ("South Area"); the other ordinance

("West Annexation Ordinance") was for annexation of an area to the west of the town ("West Area").

After a hearing, the trial court made the following pertinent findings of fact:

4. In accordance with the requirements of N.C. Gen Stat. §160A-49(i), the Town of Kernersville adopted Resolutions of Consideration of Annexation of the areas annexed in Ordinances 96-A-3 and 4 on October 5, 1993, and June 6, 1995.

5. In accordance with the requirements of N.C Gen. Stat. §160A-49(a), the Town of Kernersville adopted a Resolution of Intent to annex the areas described in Annexation Ordinances 96-A-3 and 4 on February 6, 1996.

. . . .

12. Regarding the issue submitted by the Petitioners: Is the South Annexation Area contiguous to the corporate area of the Town of Kernersville within the meaning of N.C. Gen. Stat. §160A-48(b)? The Town of Kernersville, in its Annexation Report and in its Annexation Ordinance, properly concluded that the South annexation area was contiguous to the corporate limits of the Town of Kernersville as required by N.C. Gen. Stat. §160A-48(b)(2) in that more than one-eighth of the aggregate external boundary of the area proposed for annexation coincided with the municipal boundary. The surveyor for the Petitioners herein testified that the South Annexation area was contiguous to the existing corporate limits of the Town of Kernersville as required by N.C. Gen. Stat. §160A-48(b)(2). . . . The Petitioners offered no evidence which contested the calculation of contiguity contained in the Annexation report. The Court thus finds that the South area was contiguous to the boundary of the Town as it existed at the commencement of the annexation proceedings in that 35.40% of the aggregate external boundary of the South area coincides with the existing Town limit and thus exceeds the requirement that one-eighth of the boundary coincide with the municipal boundary.

13. Regarding the issue submitted by the Petitioners: Does the west annexation area qualify to be annexed by meeting the population requirements of N.C. Gen. Stat. §160A-49(c)(1)? The Town of Kernersville properly calculated the population for the West annexation area and properly concluded that the West area

did qualify to be annexed. Testimony offered by the Parties showed that population of the West annexation area was calculated by first determining the number of dwelling units in each census block located within the area to be annexed, then determining the average family size for each census block in the area to be annexed based upon the 1990 Federal Decennial Census. The number of dwelling units in each census block was then multiplied by the average family size in each block to calculate the estimated population of each block. The block numbers were then added together to produce the population estimate used to determine whether this area complied with the requirements of N.C. Gen. Stat. §160A-48(c)(1).

The Town of Kernersville calculated the number of person residing in the West annexation area as 2.05 persons per acre which exceeds the 2 persons per acre required by N.C. Gen. Stat. §160A-48(c)(1). The method used by the Town of Kernersville produced reasonably accurate results and complied with the requirements of N.C. Gen. Stat. §160A-54(1) and were thus accepted by this Court as the statute requires. The Petitioners presented evidence that showed that by using another method of calculating average family size for the Census tract, the population for the West annexation area would be 1.88 persons per acre which would be less than the statutory requirement of 2 persons per acre; however, Petitioner's estimate of average family size included Census blocks located outside the area to be annexed while the calculation by the Town only included Census blocks located within the West annexation area. Petitioners' estimate of 1.88 persons per acre neither demonstrates an error in the method used by the Town in its calculation nor an error of greater than ten percent (10%) in the calculation made by the Town and thus fails to meet the requirements of N.C. Gen. Stat. §160A-54(1) which establish the point at which a reviewing court shall disregard the numbers produced by the annexing municipality. The Court thus finds that the West annexation area qualified to be annexed by meeting the population requirements of N.C. Gen. Stat. [§]160A-49(c)(1).

The trial court concluded that Kernersville had properly enacted the annexation ordinances and that the annexed areas met the requirements of N.C. Gen. Stat. § 160A-48.

The petitioners appeal from that judgment, raising two issues: (I) Whether the South Annexation Ordinance met N.C. Gen. Stat.

§ 160A-48(b)'s contiguity requirement, (II) Whether the West Annexation Ordinance met N.C. Gen. Stat. § 160A-48(c)(1)'s urbanization test.

I.

Petitioners contend that the South Annexation area does not meet section 160A-48(b)'s contiguity requirement. We disagree.

Kernersville brought this annexation proceeding under part 3 of Article 4a of Chapter 160A, N.C. Gen. Stat. §§ 160A-45 to -54 (1994), which applies to involuntary annexations by municipalities with populations of 5,000 or more people. Subsection (b) of N.C. Gen. Stat. § 160A-48, "Character of area to be annexed," requires that the area to be annexed "be adjacent or contiguous to the municipality's boundaries" and that "[a]t least one eighth of the aggregate external boundaries of the area must coincide with the municipal boundary."

On appeal, petitioners do not contend that the proposed annexation violates the letter of the law. Rather, they argue that although "there may be technical compliance with the contiguousness requirement . . . the substance of the annexation is that there is no connection to the Town's corporate limits, and the spirit of the contiguousness requirement has been completely subverted." In particular, they argue: (1) the proposed annexation is contiguous to an area which "in substance" is a satellite annexation and (2) the proposed annexation is a prohibited ribbon and balloon annexation. We disagree for the following reasons.

[1] First, the annexed area was not contiguous to a satellite annexation. Part 4 of Article 4A, "Annexation of Noncontiguous Areas," creates one of the exceptions to the general rule that municipalities may only annex contiguous areas, allowing annexation of a noncontiguous area if various requirements are met. N.C. Gen. Stat. §§ 160A-58 to -58.9A (1996). The boundary of such a noncontiguous area is referred to by the statute as "satellite corporate limits." *Id.* N.C. Gen. Stat. § 160A-58, the definitions section of Part 4, defines satellite corporate limits as "the corporate limits of a noncontiguous area annexed pursuant to this Part or a local act authorizing or effecting noncontiguous annexations." N.C. Gen. Stat. § 160A-58(3). Also defined is "primary corporate limits"—"the corporate limits of a city as defined in its charter, enlarged or diminished by subsequent annexations or exclusions of contiguous territory pursuant to Parts 1, 2, and 3 of this Article or local acts of the General Assembly." N.C. Gen.

Stat. § 160A-58(2). N.C. Gen. Stat. § 160A-58.6 provides that "[a]n area annexed pursuant to this Part ceases to constitute satellite corporate limits and becomes a part of the primary corporate limits of a city when, through annexation of intervening territory, the two boundaries touch."

In *Hawks v. Town of Valdese*, 299 N.C. 1, 261 S.E.2d 90 (1980), our Supreme Court interpreted the annexation statutes to prohibit the annexation of an area that was contiguous only to a satellite area. The Court held:

> [T]erritory which is contiguous *solely* to the 'satellite corporate limits' fails to satisfy the statutory requirement that the area to be annexed in an involuntary annexation proceeding be contiguous or adjacent to the municipal boundaries of the city which seeks annexation.

*Id.* at 11-12, 261 S.E.2d at 96. Thus, "[t]erritory contiguous *solely* to 'satellite corporate limits' is not eligible for annexation until such 'satellite corporate limits' become 'a part of the primary corporate limits.' " *Id.* at 12, 261 S.E.2d at 96-97. To that end, the Supreme Court in *Hawks v. Town of Valdese* concluded that:

> This occurs when, through annexation of intervening territory, the boundaries of the satellite area and those of the primary town area touch. G.S. 160A-58.6

*Id.* at 12, 261 S.E.2d at 97.

Petitioner argues that, although the South Annexation technically complies with the statutory contiguity requirement, the "substance of the annexation is that there is no connection to the Town's corporate limits, and the spirit of the contiguousness requirement has been completely subverted."

The plain language of the annexation statutes, however, supports a finding that the South Annexation meets the contiguity requirement to a primary corporate limit. The statutes specifically define a corporate limit as a satellite only when there is no connection whatsoever between the municipality and the satellite. N.C. Gen. Stat. §§ 160A-58(3), 160A-58.6. Indeed, once the areas "touch," there is no longer a satellite corporate limit, as the satellite becomes part of the primary corporate limit when the areas become connected by annexed territory. N.C. Gen. Stat. § 160A-58.6. Whether this statutory provision furthers the legislative policy or contravenes it is not

for us to say; the legislature's plain language that an annexation is no longer a satellite once it touches the primary municipal boundaries binds our decision on this issue. It is a well-established rule of statutory construction that "[w]hen language used in the statute is clear and unambiguous, this Court must refrain from judicial construction . . . ." *Poole v. Miller*, 342 N.C. 349, 351, 464 S.E.2d 409, 410 (1995), *reh'g denied*, 342 N.C. 666, 467 S.E.2d 772 (1996). Accordingly, we find this argument to be without merit.

[2] Second, the area to be annexed was not a prohibited ribbon and balloon annexation. In *Amick v. Town of Stallings*, 95 N.C. App. 64, 382 S.E.2d 221 (1989), *appeal dismissed*, 326 N.C. 587, 391 S.E.2d 40 (1990), this Court held that a "shoestring" annexation, even though technically meeting the statute's requirements, was invalid as against the policy behind the annexation statutes. *Id.* at 72, 382 S.E.2d at 226; *see also id.* at 66, 382 S.E.2d at 223 (diagram of prohibited shoestring annexation).

In this case, the annexation area is a rectangle, of which the easternmost side is solidly abutted against the existing corporate limits. Thus, we find no merit to petitioner's contention that the South Annexation is a prohibited shoestring.

II.

[3] Petitioners also contend that the West Annexation Area does not meet section 160A-48(c) (1)'s urbanization test. They argue that Kernersville's method for calculating population density was not authorized under the relevant annexation statutes: N.C. Gen. Stat. § 160A-48(c) which provides in pertinent part,

> (c) Part or all of the area to be annexed must be developed for urban purposes. An area developed for urban purposes is defined as any area which meets any one of the following standards:

> (1) Has a total resident population equal to at least two persons for each acre of land included within its boundaries; . . .

and N.C. Gen. Stat. § 160A-54, "Population and land estimates," which provides in pertinent part,

> In determining population and degree of land subdivision for purposes of meeting the requirements of G.S. 160A-48, the municipality shall use methods calculated to provide reasonably accurate results. In determining whether the standards set forth in

G.S. 160A-48 have been met on appeal to the superior court under G.S. 160A-50, the reviewing court shall accept the estimates of the municipality:

(1) As to population, if the estimate is based on the number of dwelling units in the area multiplied by the average family size in such area, or in the township or townships of which such area is a part, as determined by the last preceding federal decennial census; or if it is based on a new enumeration carried out under reasonable rules and regulations by the annexing municipality; provided, that the court shall not accept such estimates if the petitioners demonstrate such estimates are in error in the amount of ten percent (10%) or more.

However, the findings of the trial court indicate that Kernersville did follow the statutory requirements:

Testimony offered by the Parties showed that population of the West annexation area was calculated by first determining the number of dwelling units in each census block located within the area to be annexed, then determining the average family size for each census block in the area to be annexed based upon the 1990 Federal Decennial Census. The number of dwelling units in each census block was then multiplied by the average family size in each block to calculate the estimated population of each block. The block numbers were then added together to produce the population estimate used to determine whether this area complied with the requirements of N.C. Gen. Stat. §160A-48(c)(1).

Nonetheless, petitioners argue that this methodology, which they term the "micro approach," is not a statutorily authorized method. Further, they argue that under a "macro approach," utilizing census tracts instead of census blocks (tracts encompass larger areas than blocks) would produce a more accurate result. They also contend that the town's approach is subject to distortion from development.

There is no evidence that would allow us to do anything but speculate as to whether Kernersville's approach was distorted by development, and we will not so speculate. Indeed, Kernersville's approach, which is more narrowly tailored to the area under consideration than petitioner's method, appears to satisfy the statutory requirements for the estimation methodology. As we believe Kernersville did follow a statutorily authorized method for estimat-

ing population, we do not consider the remainder of petitioners' arguments, as they were based on that premise.

Affirmed.

Judges JOHN and McGEE concur.